445 So.2d 666 (1984)
The STATE of Florida, Appellant,
v.
Rene BORREGO, Appellee.
No. 83-867.
District Court of Appeal of Florida, Third District.
February 21, 1984.
Jim Smith, Atty. Gen. and Paul Mendelson, Asst. Atty. Gen., for appellant.
Gelber, Glass, Durant, Canal, Pineiro & Greene and Joseph Durant, Miami, for appellee.
Before BARKDULL, FERGUSON and JORGENSON, JJ.
JORGENSON, Judge.
This is an appeal by the state from an order of the trial court granting Rene Borrego's motion to dismiss based upon a bad faith prosecution. We have jurisdiction. See Fla.R.App.P. 9.140(c)(1)(A). For the reasons which follow we reverse.
In its order of dismissal the trial court made extensive findings as follows:
1. The Defendant, RENE BORREGO, up until December 12, 1982, had been employed for nine and one-half years as a Police Officer with the North Bay Village Police Department.
2. On December 19, 1982, at about 11:00 A.M., officers of the Metro-Dade Police Department arrested BORREGO at his house for dealing in stolen property, after he allegedly received stolen diamonds delivered by an informant employed by the Metro-Dade Department.

*667 3. After his arrest, BORREGO, [sic] was driven to an office of the Metro-Dade Police Deaprtment [sic] building where he was questioned by Sgt. Collins about cooperating with the police.
4. BORREGO awaited the arrival of an attorney while the police awaited the arrival of Assistant State Attorney LaVecchio.
5. Assistant State Attorney LaVecchio arrived at the police office around 3:00 P.M., with BORREGO's attorney, Joseph Corey, arriving about one-half hour later.
6. Chief Blair was called and he arrived during this time period. His being called was based on the fact that Borrego was a police officer with the North Bay Village Police Department. After his arrival, Chief Blair made his position known that the defendant would no longer be employed by North Bay Village. Chief Blair's position in this regard was unequivocal.
7. Present during various stages of discussions were Borrego, LaVecchio, Corey, Sgt. Collins and Sgt. Howett, of the Metro-Dade Police Department, Police Chief Blair and Detective Nevers from the North Bay Village Police Department, Daniel Borrego and another detective, both with the Metro-Dade Police Department.
8. Sgt. Collins testified that he wanted Borrego to work in an undercover capacity in exchange for which the charges against him would be dropped.
9. Discussions took place concerning Borrego's resignation or termination from the North Bay Village Police Department with Borrego wanting a resignation instead of being fired so that he would be in better standing should he desire to apply for a police position with another department.
10. The discussions between LaVecchio, Collins, Corey and BORREGO, (through his attorney, Corey) continued for several hours. BORREGO decided to sign a letter of resignation from the North Bay Village Police Department.
11. After lengthy discussions between Corey, Collins, and BORREGO (through Corey), and LaVecchio, a document was drafted by LaVecchio which was entitled "No Action Agreement" which was signed by LaVecchio and a copy of the document was given to Corey. This document has been submitted as evidence in this case. This agreement provided in part that BORREGO was to perform certain acts for the Metro-Dade Police Department and the State Attorney's office.
During this time, at Organized Crime Bureau, BORREGO made no statements in regard [sic] the charges against him and was asked nothing about his own case.
12. The meeting ended with BORREGO and his attorney agreeing to be in LaVecchio's office at the State Attorney's office the next afternoon. The meeting ended about 7:30 P.M.
13. After BORREGO's "arrest" on December 19, 1982, he was not booked into jail, fingerprinted, photographed or otherwise processed. The reason according to the police was that if BORREGO was going to work undercover, they wanted to keep the fact of his arrest quiet.
14. Early the next morning, December 20, 1982, Assistant State Attorney LaVecchio went in to tell Chief Investigator Ray Havens and State Attorney Janet Reno what had transpired the previous day.
15. When LaVecchio told the State Attorney that the police wanted BORREGO to cooperate and that the charges would be dropped, she rejected the plan.
16. Attorney Corey and BORREGO arrived at the State Attorney's office, as agreed, and were told by LaVecchio that the deal was off.
17. BORREGO, through his attorney, reiterated that he was willing to perform in accordance with the agreement.
18. LaVecchio said the word was out that BORREGO had been arrested and *668 he would be of no use in an undercover capacity.
19. BORREGO was taken to the Dade County Jail and booked, in the normal fashion, and an Information charging him with dealing in stolen property was filed.
The trial court concluded that the state was bound, under the doctrine of equitable immunity, see Rowe v. Griffin, 676 F.2d 524 (11th Cir.1982), by its promise not to prosecute. The court in Rowe established a three-part test which must be met before an agreement not to prosecute will be judicially enforced:
We believe that, as a matter of fair conduct, the government ought to be required to honor such an agreement when it appears from the record that: (1) an agreement was made; (2) the defendant has performed on his side; and (3) the subsequent prosecution is directly related to offenses in which the defendant, pursuant to the agreement, either assisted with the investigation or testified for the government,
id. at 527-28. The only element of the Rowe test that has been met in this case was the making of an agreement. Borrego, although willing to perform, did not perform, nor did he assist with the investigation or testify. Borrego has not shown that he detrimentally relied upon the state's promise not to prosecute nor has he shown any prejudice. Both of these criteria are necessary before such an agreement will be enforced. See Rowe; cf. Odom v. State, 310 So.2d 770 (Fla. 2d DCA 1975) (specific performance of plea bargain not available to the defendant absent clear showing of irrevocable prejudice). Equitable immunity, if it exists in Florida, is not present in this case.
Borrego's reliance on State v. Davis, 188 So.2d 24 (Fla. 2d DCA), cert. denied mem., 194 So.2d 621 (Fla. 1966), is misplaced. In that case the defendant had performed his part of the agreement. The court held, therefore, that the state was bound by its promise. In the present case the agreement was still executory; there was no performance prior to its repudiation by the state. Borrego's willingness to perform is not performance. While we might agree with the court below, based upon sound public policy, that the state should be bound by its promises, that is not the law. We cannot enforce such agreements while they are still in their executory stage.
Reversed and remanded for further proceedings.