THE STATE OF OHIO, APPELLANT, *v.* SMALL, APPELLEE.

(No. 52679—Decided
October 19, 1987.)

*John T. Corrigan,* prosecuting attorney, and *Jack Hudson,* for appellant.

*Thomas Wagner,* for appellee.

PATTON, J. This is an appeal by the state of Ohio from an order of the Cuyahoga County Common Pleas Court dismissing an indictment that charged defendant-appellee, Keith Small, with one count of aggravated murder, in violation of R.C. 2903.01. The following facts give rise to this appeal.

Small was originally indicted in case No. CR-204052 for the aggravated murder of Kenneth Wahl. Small was arrested in Amarillo, Texas on October 30, 1985 and was returned to Cuyahoga County on November 14, 1985. On or about November 17, 1985, Small gave an oral statement to Detective John McKibben. After having been fully advised of his constitutional rights, Small revealed that on the night Wahl was killed in June 1983, Small and an individual named "Jim" drove to Wahl's home in Berea, Ohio. Wahl admitted Small and Jim, and they proceeded to ingest some drugs. Sometime later, Small and Jim exited Wahl's house and re-entered Jim's car. Wahl got into his car, and all three individuals went to a parking lot near Brookpark Road, supposedly to steal some gasoline. After arriving at the parking lot, Wahl exited his vehicle and walked toward Jim's car. As Wahl approached the driver's side of Jim's car, Jim took out a large chrome-plated revolver, aimed it at Wahl, and said, "Bye, bye." Jim fired one shot at the victim, and Wahl fell to the ground. Small stated that he had no idea that Jim was going to shoot Wahl.

Sometime later, Small consulted with his attorneys, who, in turn, entered into discussions with Detective McKibben and Assistant County Prosecutor Robert Housel. Based on Small's disclosures, an agreement was reached whereby the charges against Small would be dismissed if he would agree to take and pass a polygraph examination, give a written statement to the police of the events surrounding the killing, and make himself available to testify as a state's witness against the primary suspect, James Kusinko. The record discloses that defendant Small took a polygraph examination and that the examiners were satisfied that Small was truthful. Thereafter, on or about January 15, 1986, Small gave a written statement concerning his knowledge of the murder. Small's written statement was consistent with his earlier oral statement.

Subsequently, on January 31, 1986, a meeting was held in the trial court's chambers to have Small declared a material witness for the Kusinko trial. At that time, the agreement between the prosecution and Small was set forth for the record. Pursuant to the state's request, Small would be declared to be a material witness and would be ordered to remain in jail until he was called to testify against Kusinko. Small would be compensated for the time he spent in jail awaiting Kusinko's trial, as authorized under the Revised Code. In exchange for Small's truthful cooperation with the police investigation and prosecution, the trial court declared Small to be a material witness and entered a *nolle prosequi* as to the aggravated murder charge against

Small. Before dismissing the charge, the court sternly cautioned the defendant:

"THE COURT: Mr. Small, just be careful. This is all based upon you being honest with the authorities. Apparently you have been honest with the authorities. * * *"

Small remained in jail until May 2, 1986. Small met with Henry DeBaggis, who had assumed primary responsibility in the prosecution of Kusinko. Small was told that he was free to leave the jail, but that he should contact the prosecutor's office every week until such time as he was called to testify against Kusinko. Small remained in regular contact with the prosecutor's office and, in early July 1986, he was told to return to Cleveland as the case was coming to trial. The record discloses that at some time the prosecution against Kusinko was terminated. Small reported to the prosecutor's office on July 10, 1986 and, at that time, he was arrested and again charged with the aggravated murder of Wahl. On the same day, Small was re-indicted by the grand jury for aggravated murder in the instant case.

Through his counsel, Small filed several pre-trial motions, including a motion for dismissal and specific performance of plea agreement. On September 8 and 9, 1986, the trial court conducted a hearing on Small's motion to dismiss. The prosecution argued that Small had not been truthful when he implicated Kusinko in the murder of Wahl, as there was no evidence linking Kusinko with the murder. In reassessing the information in its file, the state argued that Small, in fact, was the "triggerman" in the slaying of Wahl.

Based on the testimony of witnesses and arguments of counsel, the court concluded that an enforceable agreement existed between the state and Small. The court further concluded that the state had not shown any new evidence between the date of the earlier dismissal, January 31, 1986, and the date of the re-indictment, July 10, 1986, which would demonstrate that Small had not complied with the terms of the agreement. Consequently, on September 11, 1986, the court entered an order granting Small's motion to dismiss the indictment due to the state's failure to comply with its agreement with Small.

The state appealed and raised three assignments of error for review:

"I. No circumstances constituting a plea bargain exist in the instant case.

"II. No proper grant of immunity was made to the defendant pursuant to Ohio Revised Code Sec. 2945.44.

"III. The trial court erred in finding that new evidence was necessary for the state to proceed on the re-indictment."

Because the assignments of error are interrelated, we will address them jointly. The issue presented in this case is whether the trial court erred in dismissing the second indictment against Small after the state had agreed not to prosecute Small in exchange for this truthful cooperation. Although the state later came to believe that Small had not been truthful in his assistance, we are constrained to conclude that the state did not make an adequate showing to support its belief. Consequently, the assignments of error are not well-taken.

We note initially that the agreement not to prosecute Small was not a grant of immunity pursuant to R.C. 2945.44. See, also, *State, ex rel. Leis,* v. *Outcalt* (1982), 1 Ohio St. 3d 147, 1 OBR 181, 483 N.E. 2d 443. Similarly, this non-prosecution agreement was not a plea bargain since Small did not enter a plea of guilty or no contest. See *Mabry* v. *Johnson* (1984), 467 U.S. 504; *Santobello* v. *New York* (1971), 404

U.S. 257. Instead, the prosecution in this case agreed not to prosecute Small on the condition that Small would be required to provide truthful information pertaining to the prosecution of Kusinko. For a discussion of this variety of "non-prosecution agreement," see *Butler* v. *State* (1983), 55 Md. App. 409, 462 A. 2d 1230.

The record in the instant case establishes that there was such a non-prosecution agreement. Likewise, after Small had taken a polygraph examination, given a written statement and remained in jail for several months until the time that he would testify, the agreement in this case had advanced beyond merely the executory stages. Contrast *State* v. *Borrego* (Fla. App. 1984), 445 So. 2d 666. The crucial question in this case is whether Small was truthful in his various statements implicating Kusinko in the murder of Wahl.

A developing body of case law now recognizes that where an agreement not to prosecute is conditioned upon the defendant's agreement to disclose information to the authorities, and it is determined that the defendant has not fulfilled the terms of the agreement, then the defendant's failure to comply with his obligations nullifies the government's promise not to prosecute. See *United States* v. *Wood* (C.A. 11, 1986), 780 F. 2d 929, certiorari denied (1986), 479 U.S. 824. The courts have reached similar results in the context of plea bargains where the defendant has agreed to "fully cooperate" or otherwise provide truthful information but it is later discovered that the defendant may not have fulfilled the terms of the agreement. See, *e.g.*, *State* v. *Curry* (1976), 49 Ohio App. 2d 180, 3 O.O. 3d 227, 359 N.E. 2d 1379; *United States* v. *Verrusio* (C.A. 7, 1986), 803 F. 2d 885. While the defendant's failure to fulfill the terms of a pre-trial agreement will relieve the

government of its reciprocal obligations under the agreement, the question of the defendant's breach is not to be finally determined unilaterally by the government. See *United States* v. *Calabrese* (C.A. 10, 1981), 645 F. 2d 1379, 1390, certiorari denied (1981), 451 U.S. 1018. Instead, the question of whether the defendant breached the agreement by inadequate performance such as by failing to provide truthful information should be determined, in the absence of an express agreement to the contrary, by the trial court by way of an evidentiary hearing. See *Butler* v. *State, supra,* at 433-439, 462 A. 2d at 1242-1245.

In the present case, the trial court conducted an evidentiary hearing on Small's motion to dismiss the second indictment. The defendant contended that the state reneged on its agreement not to prosecute Small when it re-indicted him in July 1986. The state responded by arguing that Small did not provide truthful information during the course of this agreement and, as a consequence, the state was relieved of its reciprocal promise not to prosecute. The state did not produce any witnesses to dispute in a material way the veracity of Small's previous statements, although the prosecutor alluded to statements by a co-defendant, Charles Kronik, to two individuals in which Kronik bragged that he and Small had committed the murder of Wahl and that Small was the gunman. On several occasions, the trial court correctly perceived the primary issue to be whether Small had been truthful, but the court insisted that the state produce *new* evidence since the time of the earlier dismissal in January 1986 until the time of the re-indictment in July 1986 in order to justify this second prosecution. In the absence of such evidence, the court considered the re-indictment of Small to be a breach of the agreement. Since the prosecution

was aware of Kronik's statements, among others, well before the January 1986 *nolle* of the charge against Small, the court concluded that the state had breached its agreement not to prosecute and, accordingly, dismissed the indictment.

We think that the trial court unduly emphasized the need for "new" evidence in order to justify the re-indictment of Small. The hearing below should have been directed to the question of whether Small provided truthful information in accordance with the terms of the parties' agreement. Although "new" evidence might demonstrate that the information given by Small was false, the prosecution may also reassess "old" evidence in its file to discover that the information provided was false in a material respect. As the Supreme Court has observed in a related context:

"In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings [*i.e.,* in a pre-trial setting], the prosecutor's assessment of the proper extent of prosecution may not have crystallized." *United States* v. *Goodwin* (1982), 457 U.S. 368, 381.

Thus, the fact that the prosecution may have had conflicting evidence in its file which was not fully appreciated at the time it entered into the non-prosecution agreement with the defendant will not always lock the prosecution into its pre-trial position. It is not for the judiciary to frustrate society's legitimate interest in prosecution simply because a given prosecutor was not attentive to the possibility that he was being deceived during pre-trial discussions. The *Goodwin* court stated:

"A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." (Footnote omitted.) *United States* v. *Goodwin, supra,* at 382.

Although it may not have been necessary for the prosecution to introduce new evidence which would dispute the veracity of Small's statements, we are persuaded that the state failed to present any evidence to challenge Small's truthfulness. The witnesses presented by the state at the evidentiary hearing did not provide *any* testimony which would suggest that the statements Small had given pursuant to the non-prosecution agreement were false. The only attempt to attack the truthfulness of Small's statements came from the arguments of counsel. This was not a sufficient evidentiary basis upon which the court could have concluded that Small had not fulfilled the terms of the agreement. Accordingly, under these circumstances, the state was not entitled to be relieved of its obligations under the non-prosecution agreement, and the trial court properly dismissed the indictment.

The assignments of error are not well-taken.

The judgment is affirmed.

*Judgment affirmed.*

Ann McManamon, P.J., and Dyke, J., concur.