[This opinion has been published in *Ohio Official Reports* at 83 Ohio St.3d 248.]

THE STATE OF OHIO, APPELLANT AND CROSS-APPELLEE, *v*. ADAMSON,
APPELLEE AND CROSS-APPELLANT.

[Cite as *State v. Adamson*, 1998-Ohio-284.]

*Criminal law—Trial—Witnesses—Immunity of witness turning state's evidence—*
*Immunity that has been granted pursuant to R.C. 2945.44 continues when*
*the person receiving immunity refuses to testify at a retrial.*

(No. 97-1022—Submitted April 7, 1998—Decided September 30, 1998.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Brown County, No.
CA96-05-012.

————————————

{¶ 1} In 1992, Darryl Adamson was convicted of the aggravated murder of H.C. Freeman. During the trial, the prosecution called Dianne Adamson ("Adamson"), Darryl's wife, as a witness. She refused to testify, asserting her Fifth Amendment right against self-incrimination. Upon a proper request by the prosecution, the trial court granted transactional immunity to Adamson and compelled her to testify, all pursuant to R.C. 2945.44.

{¶ 2} On appeal, the court of appeals determined that Adamson was an incompetent witness under Evid.R. 601(B)(1) and that the trial court had failed to inform Adamson that she could not be compelled to testify against her husband. Evid.R. 601(B)(2). A new trial was ordered.

{¶ 3} During the retrial, Adamson was called to testify. She asserted her Fifth Amendment right against self-incrimination and refused to testify. The court excused Adamson as a witness based on the court of appeals' judgment that Adamson's testimony could not be compelled.

{¶ 4} Following the retrial, Adamson was indicted for her role in the aggravated murder of Freeman. She filed a motion to dismiss based on the grant

of transactional immunity she had received at Darryl Adamson's first trial. The state argued that it should be able to prosecute Adamson because her refusal to testify at the retrial obviated the grant of immunity. On May 1, 1996, the trial court granted Adamson's motion to dismiss.

{¶ 5} On May 10, 1996, the state filed a notice of appeal. Adamson moved to dismiss the appeal on the ground that the appeal was not timely. The court of appeals denied the motion and allowed the appeal, and ruled that the trial court had properly dismissed the charge of aggravated murder against Adamson.

{¶ 6} The cause is now before this court pursuant to the allowance of a discretionary appeal and cross-appeal.

_____

*Susan Laker Tolbert*, Special Prosecuting Attorney, for appellant and cross-appellee.

*David A. Sams*, for appellee and cross-appellant.

_____

**PFEIFER, J.**

{¶ 7} The principal issue before us is whether immunity that has been granted pursuant to R.C. 2945.44 continues when the person receiving immunity refuses to testify at a retrial. For the reasons that follow, we hold that it does.

{¶ 8} First, we address Adamson's cross-appeal. She argues that when Crim.R. 12(J) was amended on July 1, 1995, it was intended "to encompass all appeals taken by the state of Ohio." According to that argument, the state filed its appeal outside the seven-day period provided by Crim.R. 12(J) and the appeal should have been denied.

{¶ 9} The court of appeals stated, and we agree, that "[d]espite the amendment of Crim.R. 12(J), the court finds no indication either in case law or committee comments to the amendment which would indicate that the purpose of the amendment was to require all appeals by the state to be filed within seven (7)

days." The Staff Note provides a clear indication that the amendment was not supposed to affect the period of time within which appeals must be filed. See Crim.R. 12 Staff Note, July 1, 1995 Amendment ("The 1995 amendments to Crim.R. 12 make three changes: (1) they encourage the state and the defendants to seek pretrial resolution of critical evidentiary and constitutional issues; (2) they set forth the procedure a trial court is to follow in the event of a mid-trial appeal; and (3) they clarify the certification requirement.").

{¶ 10} Prior to the 1995 amendment, Crim.R. 12(J) explicitly addressed interlocutory appeals, primarily of motions to suppress evidence, not final appeals. Final appeals of right were and are the province of App.R. 3 and 4. Nothing in the 1995 amendment of Crim.R. 12(J) suggests otherwise. For instance, Crim.R. 12(J) requires the state to certify that the appeal is not taken for the purpose of delay and that the ruling on the motion has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of prosecution has been destroyed. These requirements have no application once final judgment has been entered. We are convinced that the 1995 amendment to Crim.R. 12(J) did not change the thirty-day period within which appeals of right must be filed by the state in a criminal case.

{¶ 11} The court of appeals exercised discretion in denying Adamson's motion to dismiss. See, generally, *State v. Fisher* (1988), 35 Ohio St.3d 22, 517 N.E.2d 911. Accordingly, its judgment will not be disturbed absent an abuse of discretion. We see nothing in the record to suggest that the court's attitude was unreasonable, arbitrary, or unconscionable. *Quonset Hut v. Ford Motor Co.* (1997), 80 Ohio St.3d 46, 47, 684 N.E.2d 319, 321; *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248, 1252. We affirm the court's denial of Adamson's motion to dismiss the appeal.

{¶ 12} R.C. 2945.44(A) states:

"In any criminal proceeding in this state * * * if a witness refuses to answer or produce information on the basis of his privilege against self-incrimination, the court of common pleas of the county in which the proceeding is being held, unless it finds that to do so would not further the administration of justice, shall compel the witness to answer or produce the information, if both of the following apply:

"(1)  The prosecuting attorney of the county in which the proceedings are being held makes a written request to the court of common pleas to order the witness to answer or produce the information, notwithstanding his claim of privilege;

"(2)  The court of common pleas informs the witness that by answering, or producing the information he will receive immunity under division (B) of this section."

{¶ 13} Findings under R.C. 2945.44 (A)(1) and (A)(2) were not appealed to this court and are therefore not at issue.

{¶ 14} R.C. 2945.44(B) states:

"If, but for this section, the witness would have been privileged to withhold an answer or any information given in any criminal proceeding, and he complies with an order under division (A) of this section compelling him to give an answer or produce any information, he shall not be prosecuted or subjected to any criminal penalty in the courts of this state for or on account of any transaction or matter concerning which, in compliance with the order, he gave an answer or produced any information."

{¶ 15} Adamson invites us to construe R.C. 2945.44 strictly against the state.  R.C. 2901.04(A) states that "[s]ections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused."  As R.C. 2945.44 defines neither offenses nor penalties, we decline the invitation.

4

**{¶ 16}** Adamson also invites us to rule that R.C. 2945.44(C) provides an exclusive list of remedies for failure to comply with an R.C. 2945.44(A) order. As it is not necessary for us to rule on this matter to resolve the case before us, we decline the invitation.

**{¶ 17}** Adamson complied with the R.C. 2945.44(A) order in the first trial of Darryl Adamson. At the second trial, Adamson asserted her Fifth Amendment right against self-incrimination and refused to testify. Thus, the issue devolves to how much compliance is enough to satisfy R.C. 2945.44(B), which simply states that when a person "complies" with an R.C. 2945.44(A) order, that person shall not be prosecuted.

**{¶ 18}** The few cases that have dealt with similar issues are not particularly helpful to resolving the issue at hand.

**{¶ 19}** In *State v. Small* (1987), 41 Ohio App.3d 252, 535 N.E.2d 352, paragraph one of the syllabus, the court stated that "where an agreement not to prosecute is conditioned upon the defendant's agreement to 'fully cooperate' or otherwise provide truthful information, but it is later discovered that the defendant has not fulfilled the terms of the agreement, then the defendant's failure to comply with his obligation nullifies the government's promise not to prosecute." See *Ricketts v. Adamson* (1987), 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1. The state argues that *Small* stands for the proposition that a witness must fully comply to receive immunity pursuant to R.C. 2945.44.

**{¶ 20}** *Small* is readily distinguishable from the case before us. It did not address R.C. 2945.44; instead, it focused on an agreement concerning immunity between the defendant and the prosecution. The immunity granted Adamson was statutory and her testimony was compelled, not the result of a bargain. We conclude that whether a defendant fully cooperated pursuant to an agreement not to prosecute has no relevance on whether a defendant complied with a court order to testify pursuant to R.C. 2945.44.

**{¶ 21}** In *State ex rel. Gray v. Leis* (1980), 62 Ohio St.2d 102, 16 O.O.3d 106, 403 N.E.2d 977, a witness received a grant of immunity. The offer was withdrawn within two hours because the witness was uncooperative. The specific issue was whether a writ of prohibition could issue to prevent the trial judge from proceeding with a case against the witness who had lost his immunity. See *State ex rel. Koren v. Grogan* (1994), 68 Ohio St.3d 590, 629 N.E.2d 446. This court held that a writ should not issue because the defendant had an adequate remedy at law, an appeal.

**{¶ 22}** In *Leis*, the grant of immunity was withdrawn the same day it was offered. In this case, Adamson testified at trial and even the state does not dispute that her testimony was damaging to Darryl Adamson. Because of the factual dissimilarity between the cases, we find no principles that help us rule on the issue before us.

**{¶ 23}** The state's primary argument is that the statute requires full compliance and that for this court to hold otherwise would weaken the state's ability to obtain testimony. However, the statute does not explicitly require full compliance, it requires compliance. Further, the statute makes no mention of whether and under what conditions immunity that has been granted may be revoked.

**{¶ 24}** We conclude that Adamson complied with the court's order compelling her "to give an answer or produce any information" when she testified during the first trial of Darryl Adamson. We also conclude that immunity attached upon compliance with the R.C. 2945.44(A) order. We affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., F.E. SWEENEY and COOK, JJ., concur.

DOUGLAS and RESNICK, JJ., concur in judgment only.

LUNDBERG STRATTON, J., concurs in part and dissents in part.

---

**LUNDBERG STRATTON, J., concurring in part and dissenting in part.**

{¶ 25} I concur with the majority's disposition of Adamson's cross-appeal. However, I dissent from its conclusion that Adamson complied with the R.C. 2945.44(A) order when she testified only during the first trial of Darryl Adamson.

{¶ 26} Once Darryl Adamson's conviction was reversed on appeal and he was granted a new trial, it was as though there had been no other criminal proceeding conducted with respect to Darryl Adamson. See R.C. 2945.82. In order for Adamson to preserve the immunity granted her, she had a duty to testify upon retrial. Her compliance with the R.C. 2945.44(A) order did not end after the first trial.

{¶ 27} Merely because the statute does not expressly state whether and when immunity may be revoked, this does not mean that, as long as the witness answers or produces information on one occasion, immunity, once attached, cannot be revoked. There is no limiting language in the statute that partial compliance, or anything less than absolute compliance, is sufficient to obtain immunity. There is no statutory language that would indicate that compliance by testifying or giving information on merely one occasion in a criminal matter is sufficient to invoke continuing immunity if the witness subsequently changes her mind and no longer wants to cooperate should additional testimony be necessary.

{¶ 28} The General Assembly intended that the immunity granted by R.C. 2945.44 be a prosecutorial tool to assist the government's need for testimony. *State ex rel. Leis v. Outcalt* (1982), 1 Ohio St.3d 147, 149, 1 OBR 181, 183, 438 N.E.2d 443, 446. It would be illogical to grant a witness complete transactional immunity for testifying in a trial, who later refuses to cooperate in subsequent proceedings arising from the same criminal indictment. Under this interpretation, the witness enjoys continuing immunity from prosecution, while the government's hands are tied because it no longer has the means necessary to secure testimony from an

uncooperative witness.  This interpretation does not advance the underlying intent of the statute.  The duty to comply under an R.C. 2945.44 order should apply to all proceedings related to a particular criminal indictment.

{¶ 29} The benefit of statutory immunity comes with a price.  Adamson had to comply with the R.C. 2945.44(A) order and testify in the prosecution of Darryl Adamson for the grant of transactional immunity.  It was not the fault of the state or of Adamson that the prosecution required two trials.  Upon retrial, Adamson's immunity remains, while the prosecution, without Adamson's continued cooperation, no longer has the advantage of Adamson's testimony.  Fairness and logic dictate that Adamson's immunity be revoked once she refused to testify in the retrial.

————————————