Appellant Monica Hansen kna Klaas appeals from her conviction in the Wayne County Court of Common Pleas of attempted obstructing justice. We affirm.
On August 21, 1997, one hundred seventy police officers, sheriff's deputies, state highway patrol troopers, and FBI agents conducted a drug raid of the Wooster residences of more than seventy individuals who were suspected of drug trafficking and drug possession. The day before the raid, Klaas, an attorney, received information about it from a newspaper reporter. Klaas knew that one of her former clients, Laverne Jackson, was reputed to be a drug trafficker. She thereafter telephoned and met with Jackson and told him about the raid, although she was not certain when it would occur. Jackson, in turn, warned some other people about the raid. When the authorities searched the residences of Jackson and the individuals whom he had warned, they found no drugs. Despite that fact, because federal authorities had been gathering evidence against Jackson before the raid, Jackson had already been indicted in federal court on numerous offenses.
During the month before the raid, Jackson's telephone calls had been recorded pursuant to a court-ordered wiretap. It was Jackson's phone calls that caused the authorities to suspect that Klaas had warned Jackson about the raid. There was nothing in that phone call from Klaas to Jackson to implicate Klaas. When Jackson received a call the next day from someone warning him about the raid, however, he told the caller that he already knew about the raid because his attorney had told him. Consequently, the day after the raid, federal and local authorities questioned Klaas. Klaas revealed to them that she had been told that the information about the raid was leaked by a man named "Bob," whom she believed was Bob Merillat, the chief of police at that time.
In exchange for Klaas's agreement to provide information about "a well placed public official," the county prosecutor executed a non-prosecution agreement with her. The agreement provided that "no criminal charges for obstructing justice will be lodged against [her], except as outlined hereafter. * * * [Klaas] will cooperate fully with the investigating officers including: participate in debriefing, provide statements, recorded statements, written statements, and assist in meeting with and securing evidence against others by means of controlled meetings, employ electronic surveillance, and assist in phone traps, and provide truthful testimony. * * * [I]f any information provided by [Klaas] is ever established to be deceptive, [she] will be subject to prosecution for perjury or other related offense."
During the course of the investigation, Klaas made statements that the prosecutor found to be deceitful. Specifically, although Jackson had told authorities that Klaas warned him to make his house "squeaky clean," Klaas insisted that she had made no such statement to him. The county prosecutor determined that Klaas had been deceitful and, therefore, had breached the non-prosecution agreement.
Klaas was indicted on one count of obstructing justice. Although Klaas moved to dismiss the charges based on the non-prosecution agreement, the trial court denied her motion. Following a jury trial, she was convicted of the lesser offense of attempted obstructing justice. Klaas appeals and raises six assignments of error.
Klaas's first assignment of error is that the trial court erred in failing to dismiss the indictment because the state was bound by the non-prosecution agreement it executed with her. The trial court found, however, that Klaas had provided deceitful information, thereby nullifying the state's agreement not to prosecute her. Klaas raises a two-part challenge to the trial court's refusal to enforce the non-prosecution agreement. First, she contends that the trial court's finding that she lied to authorities was against the manifest weight of the evidence. Second, she contends that, even if she gave untruthful information, it was not within the scope of the information she agreed to provide. We will address each argument in turn.
The trial court's finding that Klaas gave untruthful information was based on the fact that, although she admitted she warned Jackson about the raid, she and Jackson disputed the content of their conversation. Jackson testified that, when Klaas warned him about the raid, although she never used the word "drugs," she told him that his house should be "squeaky clean." Jackson stated that he interpreted the statement to mean that he should dispose of any drugs he had. Klaas, on the other hand, insisted to authorities and in court that she never told Jackson to make his house "squeaky clean." It was for the trial judge, as trier of fact regarding the allegations underlying this motion, to determine who was telling the truth. See State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The trial judge apparently believed Jackson and, therefore, reasonably concluded that Klaas had lied to authorities about what she told him.
Klaas next challenges the trial court's finding that she breached the non-prosecution agreement. She asserts that, even if she gave untruthful information, it did not pertain to the "well placed public official," and therefore, was not within the scope of the non-prosecution agreement. Klaas argues that her agreement to provide truthful information, and the state's right to indict her if she provided deceitful information, was confined to information regarding the well placed public official.
Klaas's construction is not supported by the language of the agreement. The terms of the non-prosecution agreement were set forth in a letter from the county prosecutor to Klaas's attorney. Although the prosecutor noted, prior to stating the terms of the agreement, that Klaas had expressed a willingness to provide information about a "well placed public official," no such language was embodied in the agreement itself. Klaas agreed to provide, without qualification, "truthful information." Because she failed to fulfill her obligation under the agreement, the government's promise not to prosecute was nullified. See State v.Small (1987), 41 Ohio App.3d 252, 255. Moreover, the state explicitly reserved the right to indict Klaas "if any information
provided by [her was] ever established to be deceptive." (Emphasis added.) Because the trial court found that Klaas provided the authorities with deceitful information, even though it pertained to her own crime, she breached the non-prosecution agreement and the state was not bound by it. The trial court did not err, therefore, in refusing to dismiss the indictment. The first assignment of error is overruled.
Klaas's second assignment of error is that the trial court erred by admitting Jackson's testimony because it was obtained in violation of DR 7-109(C), which prohibits an attorney from paying compensation to a witness "contingent upon the content of his testimony or the outcome of the case." Klaas concedes that she raised no such objection to Jackson's testimony in the trial court. This Court, therefore, reviews only for plain error, which she has failed to demonstrate. State v. Self (1990), 56 Ohio St.3d 73,81.
Klaas has failed to establish the ethical violation that is at the core of her argument. Even if this Court could accept Klaas's fundamental premise that the federal government's promise to recommend a reduced sentence for Jackson and to dismiss certain charges against him constituted a payment of "compensation," the plea agreement did not condition the government's promises to Jackson on the content of his testimony or the outcome of the case. Rather, Jackson agreed to "fully cooperate * * * by providing complete and truthful information and testimony, if required, concerning unlawful activities of any kind of which [he] is aware." Klaas's second assignment of error is overruled.
Klaas's third assignment of error is that the trial court denied her right to a fair trial when it improperly limited the scope of jury voir dire and denied her request for a change of venue. She contends that, due to extensive pretrial publicity about her case, she was denied a fair trial. "[T]he fact that potential jurors have been exposed to pretrial publicity does not, in and of itself, demonstrate prejudice." State v. White (1998),82 Ohio St.3d 16, 21. "[I]f `the record on voir dire establishes that prospective veniremen have been exposed to pretrial publicity but affirmed that they would judge the defendant solely on the law and the evidence presented at trial, it is not error to empanel such venireman.'" Id.
The record reveals that the trial court conducted an adequatevoir dire on this issue and that the jury ultimately chosen was not tainted by pretrial publicity. During the trial court's voirdire of the prospective jurors, although most indicated that they had been exposed to pretrial publicity about this case, only a few indicated that they had formed an opinion. Those prospective jurors who indicated that they had formed an opinion were questioned in detail about the strength of their opinions. The trial court dismissed from the venire all of them who indicated that they could not set aside their opinions. Of the jury ultimately empanelled, only one member had indicated during voirdire that she had formed an opinion about the case. That juror, however, also stated that she would listen to both sides and decide the case on the evidence. Klaas has failed to demonstrate that she was denied a fair trial by the jury's exposure to pretrial publicity. The third assignment of error is overruled.
This Court will address Klaas's fourth, fifth, and sixth assignments of error together because each contends that the state did not present ample evidence to establish the offense of attempted obstructing justice. Her fourth assignment of error is that the trial court erred in instructing the jury on the lesser offense of attempt because there was no evidence to support a conviction on that lesser charge. Klaas's fifth and sixth assignments of error are that her conviction was not supported by sufficient evidence and that it was against the manifest weight of the evidence.
An instruction on a lesser-included offense is required "where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v. Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus. If an instruction on a lesser included offense is warranted under the evidence, the trial court must give it "not only for the benefit of the state but [also] for the benefit of the accused." State v. Wilkins (1980), 64 Ohio St.2d 382,388. Thus, Klaas's argument that the instruction was given despite her objection is unfounded unless the instruction was not warranted by the evidence.
The offense of obstructing justice consists of the following elements: (1) the act of warning another person of impending discovery or apprehension, and (2) it was committed with the purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime. R.C.2921.32(A)(3). The offense of attempted obstructing justice, on the other hand, required proof that Klaas purposely engaged in conduct "that, if successful, would constitute or result in [obstructing justice]." R.C. 2923.02 and 2921.32. Thus, an instruction on the attempt offense was warranted if there was evidence to support a conclusion that Klaas, (1) with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of Jackson, (2) attempted, but was not successful in her attempt, to warn Jackson of impending discovery or apprehension.
When reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. In reviewing a challenge to the weight of the evidence:
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
 State v. Martin (1983), 20 Ohio App.3d 172, 175.
"Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency."State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, 4. We will initially determine whether Klaas's conviction was supported by the weight of the evidence, and if it was, it was necessarily supported by sufficient evidence as well.
The evidence was undisputed that Klaas warned Jackson of the drug raid. She called him immediately after learning about it. The state also presented evidence that Jackson had a reputation as a drug dealer and that Klaas had been told that he had such a reputation. Klaas admitted that she told Jackson about the drug raid and, although she did not admit that her purpose was to help him avoid discovery or prosecution, she offered no other reason for doing so. The jury could reasonably infer that Klaas warned Jackson with the purpose to help him avoid prosecution.
The fact that Klaas warned Jackson of the drug raid, however, did not establish that she succeeded in warning him of "impending discovery." The evidence demonstrated that Jackson had already been "discovered" before Klaas called him. Federal authorities came to Wooster about a month before the drug raid to conduct a drug investigation. From the beginning, Jackson was one of their main targets and, during the next month, extensive evidence was collected against him. Pursuant to a court-ordered wiretap on his regular telephone line and his cellular telephone line, over one thousand calls were recorded. Several of the recorded conversations involved transactions for the sale of crack cocaine and revealed that Jackson was trafficking drugs. On several occasions prior to the raid, Jackson sold crack cocaine to undercover law enforcement officers. By the time Klaas warned Jackson of the drug raid, he had already been indicted in federal court and warrants had been issued for his arrest and to search his residence. Therefore, when Klaas told Jackson about the drug raid, although she was attempting to help him avoid impending discovery, the fact was, he had already been discovered. Thus, she was unsuccessful in her attempt to warn him of impending discovery and an instruction on the offense of attempted obstructing justice was warranted and the jury did not lose its way in concluding that Klaas committed that offense. Klaas's fourth, fifth, and sixth assignments of error are overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Wayne County Court of Common Pleas to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
FOR THE COURT
SLABY, P. J.
QUILLIN, J.
CONCUR
(Quillin, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Section 6(C), Article IV, Constitution.)