[Cite as *State v. Parris*, 2014-Ohio-4863.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio                                    Court of Appeals No. OT-14-015

       Appellant                              Trial Court No. 12 CR 203

v.

Cameron W. Parris                           **DECISION AND JUDGMENT**

       Appellee                               Decided:  October 31, 2014

* * * * *

Mark Mulligan, Ottawa County Prosecuting Attorney, and
Joseph H. Gerber, Assistant Prosecuting Attorney, for appellant.

Kristopher K. Hill and Thomas J. DeBacco, for appellee.

* * * * *

**SINGER, J.**

**{¶ 1}** Appellant, the state of Ohio, appeals from the Ottawa County Court of

Common Pleas judgment granting the motion to dismiss of appellee, Cameron Parris.

Because we conclude the trial court properly granted appellee's motion, we affirm.

{¶ 2} In the early morning hours of September 5, 2011, Zachary Brody assaulted Phil Masterson at Put-in-Bay on South Bass Island, Ottawa County, Ohio. This assault resulted in Mr. Masterson's death. Appellee was Brody's friend and was with Brody at Put-in-Bay on the day of the crime. Appellee had knowledge of the crime and the events which occurred afterwards.

{¶ 3} On September 13, 2011, appellee's counsel, who represented appellee in regards to the death of Phil Masterson, sent a proffer letter to the Ottawa County Prosecutor "to immunize my client in exchange for his truthful testimony throughout the legal process." The letter indicated appellee would meet and give a "full honest disclosure" in a taped interview and at grand jury. The letter stated "[i]f my client's testimony is useful to you, I would ask that you agree to grant my client immunity from any future charges in exchange for his truthful testimony." The letter further provided "[y]our signature at the bottom of this page indicates your agreement to this Proffer." The letter was signed by appellee's counsel and the Ottawa County Prosecutor.

{¶ 4} On September 14, 2011, appellee was interviewed by law enforcement officers for almost two hours. The interview was taped. On September 15, 2011, a grand jury was empaneled, however, appellee was not called to testify. Also on that day, appellee was notified by appellant that he "has not made a full and truthful disclosure. Thus our agreement for immunity has been breached." Appellant further informed appellee at least one, and probably more, felony charges against him were appropriate.

2.

{¶ 5} On March 12, 2012, Brody was charged with one count of involuntary manslaughter and two counts of tampering with evidence, and entered a plea of guilty to all counts. The trial court accepted Brody's guilty plea, and on May 23, 2012, imposed maximum, consecutive sentences for a total of 16 years in prison. Brody appealed the sentence and this court affirmed the trial court's judgment in *State v. Brody*, 6th Dist. Ottawa No. OT-12-022, 2013-Ohio-1708.

{¶ 6} On November 1, 2012, appellee was charged by indictment with three counts of tampering with evidence, three counts of obstructing justice, one count of failure to report a death and one count of falsification. Counts one through seven of the indictment are alleged to have occurred on or about September 4, 5 or 6, 2011, and count eight is alleged to have occurred on or about September 14, 2011.

{¶ 7} On January 3, 2013, appellee filed a motion to dismiss/motion for specific performance with the trial court seeking specific performance of the agreement not to prosecute, and to have the indictment against him dismissed.

{¶ 8} On February 28, 2013, a hearing was held. At the hearing, appellee's counsel and the Ottawa County Prosecutor testified they entered into a written non-prosecution agreement on September 13, 2011 ("the agreement"). Following further testimony, the trial court denied appellee's motion finding it was appellee's burden to prove compliance with the agreement. Thereafter, appellee filed a motion to reconsider as well as other motions. On July 18 and September 3, 2013, the trial court held additional hearings on the pending motions.

3.

{¶ 9} On March 27, 2014, the trial court issued its decision, finding it was appellee's burden to prove the existence of the agreement, then the burden shifted to appellant to establish, by a preponderance of the evidence, that appellee breached the agreement and the breach was sufficiently material to warrant rescission of the agreement. The court noted the parties stipulated that they entered into the agreement. The trial court then found appellant did not establish by a preponderance of the evidence that appellee breached or materially breached the agreement. The court granted appellee's motion to dismiss as to counts one through seven of the indictment, but denied the motion to dismiss as to count eight of the indictment.

{¶ 10} Appellant timely filed its appeal, setting forth two assignments of error:

I. The Ottawa County Court of Common Pleas abused its discretion when it dismissed counts one through seven of the indictment against Cameron Parris because Cameron Parris did not perform a condition precedent to the State's performance under the non-prosecution agreement.

II. The Ottawa County Court of Common Pleas abused its discretion when it dismissed counts one through seven of the indictment against Cameron Parris because Cameron Parris materially breached the non-prosecution agreement.

{¶ 11} There are three types of non-prosecution agreements. *See State v. Stanley*, 7th Dist. Mahoning No. 99-C.A.-55, 2002-Ohio-3007, ¶ 41. The first type of agreement is a negotiated plea agreement or plea bargain, which is permitted pursuant to Crim.R. 11,

4.

and is not binding until accepted by the court. *Id.* The second type is a grant of immunity by the trial court pursuant to R.C. 2945.44. *Id.* at ¶ 42. The third type is a pre-indictment agreement wherein a person agrees to provide truthful information about a crime on the condition that he or she will not be prosecuted at all. *Id.* at ¶ 48. No court approval is required for a pre-indictment agreement. *Id.*

{¶ 12} This court has recognized that non-prosecution agreements are governed by contract law. *See State v. Reimsnyder, II*, 6th Dist. Erie No. E-96-006, 1997 WL 224969, *11 (May 2, 1997). With respect to the meaning of a contract term, courts must give common words in a written instrument their plain and ordinary meaning, unless an absurd result would follow or there is clear evidence of another meaning found on the face of the document or from a reading of the entire contents of the instrument. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraphs one and two of the syllabus. If the meaning of a contract term cannot be determined from the four corners of the document, a factual determination of the parties' intent may be necessary to supply the missing term. *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 322, 474 N.E.2d 271 (1984). Extrinsic evidence will be considered only "where the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning." *Kelly v. Medical Life Ins. Co.*, 31 Ohio St.3d 130, 132, 509 N.E.2d 411 (1987).

5.

{¶ 13} The construction of written contracts is generally a matter of law, which an appellate court reviews de novo. *Ohio Bell Tel. Co. v. PUCO*, 64 Ohio St.3d 145, 147, 593 N.E.2d 286 (1992). *See also Reimsnyder, II.* With respect to factual determinations made by a trial court, appellate courts must accept those findings if they are supported by competent, credible evidence in the record. *State v. Williams*, 23 Ohio St.3d 16, 19, 490 N.E.2d 906 (1986).

{¶ 14} In cases where a witness has promised to cooperate or provide honest information to law enforcement in exchange for an agreement not to prosecute, the government's promise not to prosecute is nullified "[if] it is determined that the defendant has not fulfilled the terms of the agreement * * *." *State v. Small*, 41 Ohio App.3d 252, 255, 535 N.E.2d 352 (8th Dist.1987). When a witness does not fulfill the terms of an agreement, the failure "will relieve the government of its reciprocal obligations under the agreement." *Id.* Whether a witness breached a non-prosecution agreement by failing to provide honest information should be determined by the trial court at an evidentiary hearing. *Id.* The witness must first demonstrate the existence of a non-prosecution agreement, then the government must prove by a preponderance of the evidence the witness breached that agreement and "the breach is sufficiently material to warrant rescission." (Citation omitted.) *State v. Stanley*, 7th Dist. Mahoning No. 99-C.A.-55, 2002-Ohio-4372, ¶ 16, 18. Whether a party has materially breached a non-prosecution agreement depends, in part, upon the incriminating nature of the information

6.

provided by the witness. *United States v. Fitch*, 964 F.2d 571, 575 (6th Cir.1992). It must, of course, be remembered that "the promise of a state official in his public capacity is a pledge of the public faith and is not to be lightly disregarded. The public justifiably expects the state, above all others, to keep its bond." (Citation omitted.) *State v. Moore*, 7th Dist. Mahoning No. 06-MA-15, 2008-Ohio-1190, ¶ 62.

{¶ 15} In its first assignment of error, appellant argues the trial court erred by dismissing counts one through seven of the indictment because appellee did not perform a condition precedent to appellant's performance under the agreement. Appellant contends appellee's full and honest disclosure was a condition of its performance to grant appellee immunity from prosecution. Appellant submits appellee lied on multiple occasions and was not useful to the prosecution because once a witness lies, the effectiveness of that witness is marginalized.

{¶ 16} In its second assignment of error, appellant argues the trial court erred by dismissing counts one through seven of the indictment since appellee materially breached the agreement. Appellant observes the parties stipulated to the existence of the agreement. Appellant maintains it was unreasonable for the trial court to find appellant was not deprived of the benefit of its bargain since appellant's benefit of the bargain with appellee was appellee's full and honest disclosure which would be useful to appellant. Appellant contends appellee's disclosure was not full or honest, and appellee was not useful to it.

7.

{¶ 17} Since appellant's assignments of error are related, they will be addressed together.

{¶ 18} The type of non-prosecution agreement here is a pre-indictment agreement; appellee agreed to provide a "full honest disclosure" in exchange for which appellant agreed to grant appellee "immunity from any future charges." Although the agreement mentions immunity, it clearly means immunity from prosecution, not a grant of immunity pursuant to R.C. 2945.44. In any event, the existence of the agreement is not disputed by the parties.

{¶ 19} What is in dispute is whether appellee fulfilled the terms of the agreement or whether appellee breached the agreement by failing to provide a full and honest disclosure and whether this breach was material such that the information disclosed was not useful to appellant and appellant did not get the benefit of the bargain.

{¶ 20} The phrase in the agreement, "full honest disclosure," must be given its plain and ordinary meaning, unless an absurd outcome would result. Full is defined as "complete esp. in detail." *Merriam-Webster's Collegiate Dictionary* 471 (10th Ed.1996). Honest means truthful, *id.* at 556, and disclosure means revelation, *id.* at 330. There is nothing absurd or ridiculous about the phrase's ordinary meaning, therefore the ordinary meaning of the phrase will be used.

{¶ 21} Appellant submits appellee's full and honest disclosure was a condition of its performance to grant appellee immunity, and since appellee was untruthful, appellant

8.

terminated the agreement. Appellant maintains appellee did not provide a full honest disclosure, and materially breached the agreement because he left out or misrepresented many important details during the taped interview. Specifically, appellant asserts appellee omitted the following information during his interview: finding Mr. Masterson's wallet, mentioning the blood on the deck, picking up Mr. Masterson's shirt and giving the shirt to Clifton Knoth to throw away, and revealing Brody and his girlfriend went back to Put-in-Bay to further cover up the crime scene after appellee left the island.

{¶ 22} A breach of a non-prosecution agreement is considered material if "the non-breaching party is deprived of the benefit of the bargain." *Stanley*, 7th Dist. Mahoning No. 99-C.A.-55, 2002-Ohio-4372 at ¶ 18, quoting *United States v. Castaneda*, 162 F.3d 832, 837 (5th Cir.1998). "The less the non-breaching party is deprived of the expected benefits, the less material the breach." *Castaneda* at 837. Another method of determining whether a breach is material is by applying the converse of the substantial performance concept, which is, "if a party's 'nonperformance * * * is innocent, does not thwart the purpose of the bargain, and is wholly dwarfed by that party's performance,' the breaching party has substantially performed under the contract, and the non-breaching party is not entitled to rescission." (Citation omitted.) *Id*. As the court noted in *Castaneda*,

> [D]espite Castaneda's relatively insignificant omissions, the government got the benefit of its bargain and has failed to carry its burden of proving a material breach by Castaneda. * * * Although it appears that

Castaneda's performance was not perfect-that he did not literally "tell everything he knew," as he was technically required to do under the agreement-the government has failed to show that these omissions were intentional or, more importantly, that the government was prejudiced. Much of the relatively little that Castaneda omitted was already known to the government before interrogating Castaneda, or was discovered from other sources. When viewed in light of the overwhelming quantity of information he furnished about numerous individuals and incidents * * * much that Castaneda omitted must be classified either as cumulative or surplusage. *Id.* at 839.

{¶ 23} Here, a review of the record, including the transcript of appellee's taped interview as well as the transcripts of the hearings on appellee's motion and Brody's sentencing hearing, shows appellee supplied appellant with a substantial amount of incriminating information concerning the circumstances surrounding Brody's assault of Masterson, and appellant used information learned from appellee against Brody. The evidence indicates appellee revealed to appellant certain events which occurred before and after the crime that appellant did not learn from any other source, and which assisted appellant in its prosecution of Brody. The record establishes appellee provided appellant with important facts regarding who was at the scene of the crime, how the victim was acting, what led up to the crime including what appellee saw and heard of the fight, the location of the fight on the porch of the cabin, what time the crime occurred and what

10.

transpired afterwards, including the cover-up planned by Brody. While appellee's taped interview was not flawless, the record shows many of the incidents he witnessed and relayed to appellant happened very unexpectedly in the early morning hours after appellee had returned to the cabin following a night of drinking with friends. Moreover, there is no evidence any statements made by appellee were intentionally false, nor is there evidence the omissions were substantial or in any way harmed appellant. Rather, the evidence shows appellant already knew or shortly thereafter discovered from other sources information omitted by appellee at his taped interview. Considering all of the incriminating information appellee communicated to appellant, which was subsequently used by appellant, the omissions relied upon by appellant are not sufficient to constitute a substantial material breach to justify voiding the agreement or completely invalidating appellee's value as a witness to the crime. Appellant has not shown by a preponderance of the evidence that it did not receive the benefit of the bargain contained in and contemplated by the agreement. Accordingly, the agreement should be enforced. It follows the trial court properly granted appellee's motion to dismiss as to counts one through seven of the indictment. Appellant's assignments of error are found not well-taken.

{¶ 24} The judgment of the Ottawa County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the court costs incurred on appeal.

Judgment affirmed.

11.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.   _____
                  JUDGE

Arlene Singer, J.

              _____
Thomas J. Osowik, J.        JUDGE
CONCUR.

              _____
                  JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.