OPINION
James C. Carr pled no contest to possession of crack cocaine after the Montgomery County Court of Common Pleas overruled his motion to suppress. The court found him guilty and sentenced him to nine months imprisonment. Carr appeals from this conviction, raising two assignments of error.
The state's evidence established the following facts.
The Dayton Police Department began investigating Carr for counterfeiting checks in 1999. On September 24, 1999, Detective Daniel K. Hall arranged for an informant to cash a check at Universal One Credit Union. Ernest Ferguson, an employee of Carr who had been followed to a residence at 37 Ventura, which the police had under surveillance as part of their investigation, gave a check to the informant to cash. The informant then entered the credit union where she was given over $9,000 in photocopied money. She then went to Ferguson's car and gave him all but $1,000 of the money.
The police proceeded to follow Ferguson to his residence. Shortly after Ferguson went inside, the police stopped a man leaving the residence and discovered that he had $300 of the photocopied money. After half an hour, Ferguson went to 37 Ventura and entered the residence. While the police watched the residence, two people entered the home. When they left, police discovered $2,000 of the money in their possession. When Ferguson exited the residence, he was discovered to have $1,500 of the money in his possession.
At this time, the police became concerned that individuals inside the residence would be alerted to their presence and that the remaining money would be destroyed. Detective Hall and his supervisor, Sergeant Dennis Chaney, decided to have the Violent Crimes Task Force enter the residence and secure Carr until Detective Hall could obtain a search warrant. To that end, Detective Timothy Bilinski knocked on the door of 37 Ventura and yelled, "Dayton Police. Come to the door." When there was no response after several seconds, he again knocked on the door and yelled, "Dayton Police. Come to the door." After waiting several more seconds and receiving no response, Detective Bilinski kicked open the door, and the members of the task force entered. Both Detective Bilinski and Lieutenant Charles Gift testified that approximately twenty seconds had passed from the first time Detective Bilinski knocked until they entered the premises.
Upon entering 37 Ventura, Detective Bilinski discovered Carr in the bathroom and placed him in handcuffs. The officers then searched the residence briefly to see if other individuals were present. They also briefly checked the couch for weapons prior to allowing Carr to sit on it while they waited for Detective Hall to return with a search warrant. They discovered no contraband at that time. When Detective Hall returned with a search warrant, the residence was searched. Police discovered $2,750 of the photocopied money in Carr's pocket and a baggie of crack cocaine in the couch.
Carr was indicted for possession of crack cocaine on January 19, 2001. He pled not guilty. On February 14, 2001, Carr filed a motion to suppress the cocaine. A hearing was held on March 9, 2001. At that time, Carr requested that the charges against him be dismissed or that he be granted a continuance due to alleged discovery violations by the state. The trial court denied both motions. On May 30, 2001, Carr filed a memorandum in support of his motion to suppress. Because the memorandum expanded the arguments raised in the original motion, the trial court held a second hearing on June 27, 2001. On August 24, 2001, the trial court overruled Carr's motion to suppress. Carr filed motions for clarification and reconsideration on September 5 and 6, 2001, both of which were overruled by the trial court on September 14, 2001. Carr subsequently changed his plea to no contest. On October 31, 2001, the trial court found him guilty and sentenced him to nine months imprisonment.
Carr appeals, raising two assignments of error.
"I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE."
Under this assignment of error, Carr argues that the police violated the "knock and announce" rule of R.C. 2935.12 in entering the residence at which Carr was found, that the entry into the residence was not justified by the exigent circumstances exception to the warrant requirement, and that the search warrant was defective. We will address Carr's arguments in the above order.
Initially, we note that the following standard governs our review of a trial court's decision regarding a motion to suppress: "[W]e are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." State v. Retherford (1994), 93 Ohio App.3d 586, 592,639 N.E.2d 498.
R.C. 2935.12 provides: "When making an arrest or executing an arrest warrant or summons in lieu of an arrest warrant, or when executing a search warrant, the peace officer, law enforcement officer, or other authorized individual making the arrest or executing the warrant or summons may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to make the arrest or to execute the warrant or summons, he is refused admittance, but the law enforcement officer or other authorized individual executing a search warrant shall not enter a house or building not described in the warrant."
The trial court concluded that the requirements of R.C. 2935.12 had been met. The state argues that R.C. 2935.12 does not apply because the officers were not executing a search or arrest warrant when they entered the residence. We agree with the state. The statute sets forth requirements to be followed when police are entering a residence to execute a warrant. The police in this case were not executing a warrant. Therefore, we conclude that R.C. 2935.12 is inapplicable to this case.
Carr's second argument is that the warrantless entry into the residence was not justified by an exception to the warrant requirement. The state argues that exigent circumstances justifying the entry existed because police were concerned that persons inside the residence would become aware of the police activity outside and destroy the evidence. Carr counters that there were no exigent circumstances justifying entry because the police had no indication that evidence was likely to be destroyed and because they were able to intercept the money leaving the residence.
It is well recognized that police may enter a home without a warrant where they have probable cause to search and exigent circumstances exist justifying the entry. See Minnesota v. Olson (1990), 495 U.S. 91, 100,110 S.Ct. 1684, 1690. An example of such exigent circumstances is where evidence sought is in imminent danger of destruction. See id. Carr concedes that the bait money sought by the police in this case "was capable of being easily destroyed by burning or other means," but he argues that there was no evidence that the money was actually in danger of being destroyed.
Detective Hall testified that he had been concerned that the money would be lost or destroyed because several people had come and gone from the residence during the surveillance. Further, he feared that Carr would be alerted to the presence of police and destroy the evidence. He and Sergeant Chaney therefore decided to have the Violent Crimes Task Force enter the residence to secure the occupants and insure that evidence would not be destroyed while a search warrant was obtained. Furthermore, we note that the police did not in fact search the home upon entering it aside from a cursory check for occupants and weapons within Carr's reach. Therefore, while this is a close case, we do not believe that the trial court erred in concluding that exigent circumstances justified the entry of police into the residence.
The state notes that, even if the initial entry into the home had been unlawful, the evidence obtained pursuant to the search warrant would be admissible under Segura v. United States (1983), 468 U.S. 796, 813-15,104 S.Ct. 3380, 3390-91. In Segura, the United States Supreme Court held that evidence obtained during the execution of a search warrant was admissible even though officers illegally entered the residence to secure it while the warrant was obtained. Id. The case turned upon the fact that the warrant was not based upon information gained during the illegal entry. Id. The trial court concluded that the evidence obtained in the execution of the search warrant was admissible under Segura.
Carr argues that the warrant in this case was based upon information obtained during the initial entry to the residence. He argues that the officers had no way of knowing that Carr was inside the residence before they entered it and discovered him. Detective Hall indicated at the initial hearing on the motion to suppress that the police had seen Carr entering the residence, but not leaving, and that his car was in the driveway of the residence. Carr concedes that this would be sufficient information to indicate that he was in the residence prior to the initial entry; however, he argues that Detective Hall was not credible.
We note that the credibility of the witnesses was a matter to be determined by the trial court. See State v. Mills (1992),62 Ohio St.3d 357, 366, 582 N.E.2d 972. We find no support in the record for Carr's contention that Detective Hall's testimony was so lacking in credibility that the trial court could not reasonably have relied upon it in overruling Carr's motion to suppress. Furthermore, we note that whether Carr was in the residence was irrelevant to the issuance of a warrant to search the residence. The police were obtaining a search warrant to search for evidence of an illegal check cashing operation. Carr's presence had no impact on whether probable cause to issue such a warrant existed.
For the foregoing reasons, we conclude that the trial court did not err in overruling Carr's motion to suppress.
The first assignment of error is overruled.
"II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS CHARGES DUE TO THE STATE'S NONCOMPLIANCE WITH THE COURT'S ORDER TO COMPEL PRODUCTION OF THE SEARCH WARRANT AND AFFIDAVIT AND IN DENYING APPELLANT'S MOTION FOR A CONTINUANCE."
Under this assignment of error, Carr argues that the trial court erred in overruling his motion to dismiss and alternative motion for a continuance based upon the state's alleged failure to comply with the court's order compelling production of the search warrant and affidavit. We note initially that we review the trial court's denial of both motions for abuse of discretion. See State v. Adamson, 83 Ohio St.3d 248, 250,1998-Ohio-284, 699 N.E.2d 478; State v. Unger (1981), 67 Ohio St.2d 65,423 N.E.2d 1078.
Carr filed a motion to compel production of the search warrant and affidavit fifteen days prior to the first suppression hearing. The trial court ordered the state to produce those documents ten days prior to that hearing. The state provided Carr with a copy less than two hours before the hearing. At the start of the hearing, Carr requested that the charges against him be dismissed or, in the alternative, that he be granted a continuance to review the documents. The state explained that the documents had been placed under seal by the issuing magistrate and that it had provided Carr with the documents as soon as it was able to do so.
Based upon the state's explanation of the delay in providing Carr with a copy of the search warrant and affidavit, we agree with the trial court that dismissal was not warranted. The trial court concluded that the state had complied with the order as soon as possible, and we believe that this conclusion was warranted based upon the state's explanation for the delay. Therefore, we conclude that the trial court did not err in denying Carr's motion to dismiss the charges against him.
Carr also requested a continuance so that he could fully review the documents and prepare for the suppression hearing. We find it unnecessary to consider whether the trial court erred in denying the continuance because we conclude that Carr has not established that he was prejudiced. The only prejudice Carr has asserted is that he was not given sufficient time to review the documents and prepare to cross examine witnesses at the first motion to suppress hearing. However, Carr has failed to show that the lack of a continuance prevented him from making any argument other than his argument under the first assignment of error that the search warrant was based upon evidence discovered during the initial entry into the home. As we have already concluded that that argument lacks merit, Carr has suffered no prejudice from not being able to fully explore it during the motion to suppress hearing. We further note, however, that Carr appears from the record to have conducted a thorough cross examination of witnesses during the first suppression hearing. As we are unable to identify any way that the result would have been different had Carr been granted a continuance, any error arising from the trial court's refusal to grant one would be harmless.
The second assignment of error is overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and FAIN, J., concur.