OPINION *Page 2 
{¶ 1} Defendant-appellant, Darrin Moore (Moore), appeals his conviction in the Mahoning County Common Pleas Court for escape, aggravated murder, aggravated robbery, two counts of receiving stolen property, and failure to comply with an order or signal of a police officer.
 {¶ 2} On September 9, 2003, Moore, who was seventeen years old at the time, and another person allegedly robbed a woman of her purse and vehicle in a parking lot in Boardman, Ohio. One of them also allegedly pistol whipped her, and the other removed her bra and fondled her breasts and buttocks. She was able to break free and call for help. Meanwhile, her attackers left with her blue, 2002 Dodge Neon. After Boardman Township Police were notified of the incident, one of their officers spotted the victim's car and attempted to stop it. The driver did not stop and the officer pursued the car for some distance. However, the officer could not get the car to stop and ceased the pursuit because it became too dangerous.
 {¶ 3} Later that day in Trumbull County, officers from the Liberty Township Police Department also spotted the car and began to pursue it. Officers from the Hubbard Township Police Department picked up the pursuit in their jurisdiction. The driver abandoned the vehicle and fled on foot. Officers found Moore hiding in a nearby field and arrested him.
 {¶ 4} Moore was charged in Mahoning County Common Pleas Court, Juvenile Division, with five counts in connection with the Boardman incident[1] under case No. 03 JA 1372: Count one — aggravated robbery in violation of R.C. 2911.01(A)(1), first-degree felony, with an accompanying gun specification pursuant to R.C. 2941.145; Count two — felonious assault in violation of R.C. 2903.11, a *Page 3 
second-degree felony, with an accompanying gun specification pursuant to R.C. 2941.145; Count three — gross sexual imposition in violation of R.C. 2907.05(A)(1), a fourth-degree felony; Count four — assault in violation of R.C. 2903.13, a first-degree misdemeanor; and Count five — kidnapping in violation of R.C. 2905.01(A)(1), a first-degree felony.
 {¶ 5} For the pursuit that followed in Trumbull County, Moore was charged in Trumbull County Common Pleas Court, Juvenile Division, with failure to have an operator's license, failure to comply with an order of a police officer, and receiving stolen property. That case was later transferred to Mahoning County Common Pleas Court, Juvenile Division, and assigned case No. 03 JK 1461.
 {¶ 6} On October 22, 2003, Moore was being held in the Mahoning County Juvenile Justice Center (JJC) on the aforementioned charges. That day, Moore complained to staff at JJC that he was experiencing leg pain due to an ankle injury. Later that day, Michael Trolio, an assistant supervisor at JJC, transported Moore to Northside Medical Center for treatment. A doctor treated Moore and applied an air-shoe cast. Because of the air cast, Trolio was unable to secure Moore with shackles prior to returning to the car. As they reached the car, Moore dropped his crutches and fled. Trolio was unable to catch up to him and called for assistance. Various law enforcement agencies converged on the area, but were ultimately unable to locate Moore.
 {¶ 7} On December 11, 2003, Moore and Damon Clark went to the parking lot of the 541 Club located in Youngstown, Ohio to steal a car because the stolen car they were already in was running low on gas. They approached Robert Smith who was sitting in his 1997 Cadillac Catera. Moore robbed Smith of his car and Clark jumped in it. As Smith was running away, Moore shot Smith several times, killing him.
 {¶ 8} Clark and Moore then both went to the home of Shalonda Bohazi-Hammond around midnight. There, Moore emptied shell casings into an ashtray and *Page 4 
informed her that they had just shot somebody. She later learned that it was Moore who had shot Smith in the parking lot of the 541 Club. Both Moore and Clark also went to the home of Clark's cousin, Shawntae Martinez, later that night.
 {¶ 9} At some point, Moore and Clark also allegedly stole a white van. They retrieved the Cadillac from Bohazi-Hammond's house and set it on fire off of Salt Springs Road.
 {¶ 10} Members of the Youngstown Police Department's Street Crime Unit located Moore on January 8, 2004. Moore fled police in a stolen 1998 Oldsmobile 98. After a pursuit, Moore was found hiding behind a pile of wooden pallets and was arrested.
 {¶ 11} Once returned to custody, Moore faced numerous new charges in Mahoning County Common Pleas Court, Juvenile Division (Juvenile Court). In case No. 04 JA 34, Moore was charged with one count of escape in violation of R.C. 2921.34, a second-degree felony, in connection with his October 22, 2003 escape from custody after having received medical treatment at Northside Medical Center.
 {¶ 12} In case No. 04 JA 48, Moore was charged with five counts. In connection with the December 11, 2003 robbery and murder of Robert Smith, Moore was charged as follows: Count one — aggravated murder in violation of R.C. 2903.01(B), with an accompanying gun specification pursuant to R.C. 2941.145; Count two — aggravated robbery in violation of R.C. 2911.01, a first-degree felony, with an accompanying gun specification pursuant to R.C. 2941.145; and Count three — receiving stolen property in violation of R.C. 2913.51, a fourth-degree felony. Moore was also charged with two additional counts of receiving stolen property (Counts four and five), in violation of R.C. 2913.51, both fourth-degree felonies, for other vehicles stolen during that same period of time.
 {¶ 13} Lastly, in case No. 04 JA 36, Moore was charged with three counts in connection with the pursuit and his apprehension by officers of Youngstown Police Department's Street Crime Unit on January 8, 2004: Count one — receiving stolen *Page 5 
property in violation R.C. 2913.51, a fourth-degree felony; Count two — failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B), a third-degree felony; and Count three — resisting arrest in violation of R.C. 2921.33, a second-degree misdemeanor.
 {¶ 14} All of the cases (03 JA 1372, 03 JK 1461, 04 JA 34, 04 JA 48, 04 JA 36) proceeded to a probable cause hearing in Juvenile Court on March 31, 2004. Plaintiff-appellee, State of Ohio, advised the court that it had reached an agreement with Moore (now eighteen years old) following "extensive pretrial negotiations." The State agreed to move to dismiss certain charges in exchange for Moore agreeing to waive probable cause on the remaining charges and agreeing to be bound over to the General Division of the Mahoning County Common Pleas Court. Specifically, the State agreed to dismiss the following: in case No. 03 JA 1372 — Count two (felonious assault) and Count four (assault); case No. 03 JK 1461 in its entirety (no operator's license, failure to comply with an order of a police officer, and receiving stolen property); in case No. 04 JA 48 — Counts three, four, and five (receiving stolen property); and in case No. 04 JA 36 — Count two (failure to comply with an order of a police officer) and Count three (resisting arrest). Moore stipulated to probable cause on the remaining charges as follows: in case No. 03 JA 1372 — Count one (aggravated robbery), Count three (gross sexual imposition), and Count five (kidnapping); in case No. 04 JA 34 — Count one (escape); in case No. 04 JA 36-Count one (receiving stolen property); and in case No. 04 JA 48 — Count one (aggravated murder) and Count two (aggravated robbery). The agreement was put to writing and signed by all parties including Moore, Moore's counsel, Moore's guardian ad litem, Moore's mother, the assistant prosecuting attorney handling the case, and the Juvenile Court Judge. Additionally, at the hearing, the court went to extensive lengths to ensure that Moore was voluntarily and knowingly waiving probable cause. Subsequently, on April 8, 2004, the Juvenile Court filed a judgment entry embodying *Page 6 
the parties' March 31, 2004 written agreement and ordered the case transferred to the General Division.[2]
 {¶ 15} On May 6, 2004, the Mahoning County Grand Jury indicted Moore on ten counts. In connection with the December 11, 2003 robbery and murder of Robert Smith, Moore was charged as follows: Count one — aggravated murder in violation of R.C. 2903.01(B)(F), a felony-life offense; Count two — aggravated robbery in violation of R.C.2911.01(A)(1)(C), a first-degree felony; and Count three — receiving stolen property in violation of R.C. 2913.51(A)(C).
 {¶ 16} In connection with the September 9, 2003 Boardman incident, Moore was charged as follows: Count four — aggravated robbery in violation of R.C. 2911.01(A)(1)(C), a first-degree felony; Count five — gross sexual imposition in violation of 2907.05(A)(1)(B), a fourth-degree felony; Count six — kidnapping in violation of R.C.2905.01(A)(1)(C); and Count eight — felonious assault in violation of 2903.11(A)(2)(D), a second-degree felony.
 {¶ 17} In connection with his October 22, 2003 escape from custody, Moore was charged in Count seven of the indictment with escape in violation of R.C. 2921.34(A)(1)(C), a second-degree felony.
 {¶ 18} In connection with the pursuit and his apprehension by officers of the Youngstown Police Department's Street Crime Unit on January 8, 2004, Moore was charged as follows: Count nine — receiving stolen property in violation of R.C. 2913.51(A)(C), a fourth-degree felony, and Count ten — failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B)(C)(1)(5)(a)(ii), a third degree felony.
 {¶ 19} Also, a firearm specification was attached to Counts one, two, four, five, six, and eight pursuant to R.C. 2941.145(A).
 {¶ 20} On May 18, 2004, Moore pleaded not guilty and was appointed counsel. The case proceeded to discovery and other pretrial matters. There are three *Page 7 
pretrial motions of particular relevance to this appeal — a motion for severance, a motion to enforce the March 31, 2004 "plea agreement" reached in Juvenile Court, and a motion to dismiss on speedy trial grounds.
 {¶ 21} On July 14, 2004, Moore filed a motion for severance pursuant to Crim.R. 14. Moore asserted that the indictment contained charges for four separate and distinct events involving different alleged victims, witnesses, and evidence-Counts four, five, six, and eight involving the September 9, 2003 Boardman incident; Count seven involving his escape from the custody of JJC; Counts one, two, and three involving the December 11, 2003 robbery and murder of Robert Smith; and Counts nine and ten involving his recapture on January 8, 2004.
 {¶ 22} The trial court granted Moore's motion for severance in part on February 24, 2005. The court ordered that the following counts be tried first: Count one (aggravated murder), Count two (aggravated robbery), Count three (receiving stolen property), and Count seven (escape). The court held that the remaining counts be tried second: Count four (aggravated robbery), Count five (gross sexual imposition), Count six (kidnapping), Count eight (felonious assault), Count nine (receiving stolen property), and Count ten (failure to comply with an order or signal of a police officer). The court also ordered that the second trial include two counts of assault on a police officer stemming from case No. 04 CR 987.[3]
 {¶ 23} On February 10, 2005, Moore filed a motion to enforce the March 31, 2004 agreement reached in Juvenile Court. Moore contended that in that agreement the State agreed to not indict him on Count eight (felonious assault) and Count ten (failure to comply with an order or signal of a police officer).
 {¶ 24} On June 13, 2005, Moore filed a motion to dismiss all charges against him on speedy trial grounds. Moore was arrested on January 8, 2004, and indicted on May 6, 2004. Moore did not go to trial until another nineteen months later. Moore argued that he was denied a speedy trial and should be discharged. *Page 8 
 {¶ 25} On January 3, 2006, the day before trial, the trial court heard arguments on Moore's pretrial motions. The trial court denied Moore's motion to dismiss Counts eight and ten and denied Moore's motion to dismiss on speedy trial grounds. Contrary to its February 24, 2005 judgment entry ordering severance and over the objection of Moore's trial counsel, the trial court sustained the State's motion to join Counts nine (receiving stolen property) and ten (failure to comply with an order or signal of a police officer) to be tried in the first trial along with Counts one (aggravated murder), two (aggravated robbery), three (receiving stolen property), and seven (escape).
 {¶ 26} The first case proceeded to a jury trial on January 4, 2006. The State presented the testimony of numerous witnesses. Michael Trolio testified about Moore's escape from the custody of JJC. (Tr. 424-434.) Kenneth Smith, Robert Smith's brother, testified about how he was in the process of selling the Cadillac Catera to his brother. (Tr. 435-442.) Officer Robert Jolliff testified about responding to the scene of the shooting at the 541 Club and the subsequent recovery of Smith's vehicle. (Tr. 443-451, 470-472.) Shalonda Bohazi-Hammond and Shawntae Martinez testified about seeing Clark and Moore on the evening of the shooting and Moore's tacit admission to them. (Tr. 472-488, 489-505.) Brian Ellis testified about his vehicle being stolen from the 541 Club the day before Smith's murder. (Tr. 506-513.) Evelyn Hammond testified that she reported her 1995 Pontiac Transport stolen in December 2003 (Tr. 613-619.)
 {¶ 27} Also testifying was Debra Lagamba, a responding paramedic (Tr. 517-521), Robert Mauldin, a crime scene technician (567-585), Dr. Robert Belding, the deputy coroner (Tr. 588-598), and Jonathan Gardner, a ballistics expert from the Ohio Bureau of Identification and Investigation (Tr. 599-611), and Officer Malik Mostella who photographed Smith's burned out Cadillac (Tr. 620-622). Michael Ascione testified about his 1988 Oldsmobile Ninety-Eight being stolen. (Tr. 553-555.) Detective/Sergeant Pat Kelly testified about Moore fleeing in Ascione's car and subsequent recapture. (Tr. 556-562.) Gregory Hundley testified to Moore's admission *Page 9 
to him in jail about the Smith robbery and murder. (Tr. 623-632.) The State's main witness, Damon Clark, detailed how Moore robbed Smith of his car, shot him, and then how both of them set Smith's car on fire in an attempt to remove any trace of fingerprints (Tr. 522-552.)
 {¶ 28} Moore's defense counsel rested without calling any witnesses. After several days of deliberation, the jury returned a verdict of guilty on all counts.
 {¶ 29} On January 19, 2006, the trial court sentenced Moore to prison as follows: aggravated murder — twenty years to life plus three years for the firearm specification to be served prior to and consecutive to the twenty years to life sentence; aggravated robbery — ten years to be served consecutively to the twenty years to life sentence and three years for the firearm specification to merge with the three year firearm specification for the aggravated murder conviction; both counts of receiving stolen property — eighteen months on each count to be served consecutively to each other and to the ten year sentence for the aggravated robbery conviction; escape — eight years to be served consecutively to all of the aforementioned sentences; and failure to comply with an order or signal of a police officer — five years to be served consecutively to all of the aforementioned sentences. This appeal followed. Moore raises six assignments of error.
 PRE-INDICTMENT, NON-PROSECUTION AGREEMENT {¶ 30} Moore's first assignment of error states:
 {¶ 31} "The Trial Court Denied Appellant Due Process of Law and a Right to a Fair Trial Guaranteed by the U.S. CONST. Amend. VI, and XIV; and OHIO CONST. Art. I §§ 1, 9, 10, and 16 When it Failed to Enforce the Pre-indictment Agreement."
 {¶ 32} Moore argues that the trial court erred in failing to enforce the March 31, 2004 agreement that he entered into with the State in Juvenile Court. Contrary to that agreement, Moore maintains that the State indicted him on charges that it had agreed to dismiss and not present to the grand jury, including failure to comply with an order or signal of a police officer, receiving stolen property, and felonious assault. *Page 10 
 {¶ 33} In the March 31, 2004 agreement, the State agreed to move to dismiss certain charges in exchange for Moore agreeing to waive probable cause on the remaining charges and agreeing to be bound over to the General Division of the Mahoning County Common Pleas Court. Specifically, the State agreed to dismiss the following: in case No. 03 JA 1372 — Count two (felonious assault) and Count four (assault); in case No. 03 JK 1461 in its entirety (no operator's license, failure to comply with an order of a police officer, and receiving stolen property); in case No. 04 JA 48 — Counts three, four, and five (receiving stolen property); and in case No. 04 JA 36 — Count two (failure to comply with an order of a police officer) and Count three (resisting arrest). Moore stipulated to probable cause on the remaining charges as follows: in case No. 03 JA 1372 — Count one (aggravated robbery), Count three (gross sexual imposition), and Count five (kidnapping); in case No. 04 JA 34 — Count one (escape); in case No. 04 JA 36 — Count one (receiving stolen property); and in case No. 04 JA 48 — Count one (aggravated murder) and Count two (aggravated robbery). The agreement was put to writing and signed by all parties including Moore, Moore's counsel, Moore's guardian ad litem, Moore's mother, the assistant prosecuting attorney handling the case, and the Juvenile Court Judge. Additionally, at the hearing, the court went to extensive lengths to ensure that Moore was voluntarily and knowingly waiving probable cause. Subsequently, on April 8, 2004, the Juvenile Court filed a judgment entry embodying the parties' March 31, 2004 written agreement and ordered the case transferred to the General Division.
 {¶ 34} On May 6, 2004, the Mahoning County Grand Jury indicted Moore on ten counts. Count three regards receiving stolen property; specifically, a 1995 Pontiac Transport van owned by Evelyn Hammond. Damon Clark testified that after the Smith murder, Moore stole a white Pontiac van and they both used it to go buy gas and set Smith's Cadillac on fire. (Tr. 529.) Count eight regards felonious assault in connection with the September 9, 2003 Boardman incident. Count ten was failure to comply with an order or signal of a police officer in connection with Moore's *Page 11 
January 8, 2004 apprehension by officers of the Youngstown Police Department's Street Crime Unit.
 {¶ 35} In the March 31, 2004 agreement, the State clearly agreed to dismiss what would become Counts three, eight, and ten of the grand jury indictment.
 {¶ 36} In addition to the March 31, 2004 written agreement, Moore also relies on evidence adduced at the January 3, 2006 hearing on the motion to enforce that agreement and to dismiss those charges. The assistant prosecutor who handled the case and pretrial negotiations testified as follows:
 {¶ 37} "Q As a lawyer would you agree that a probable cause hearing is a significant right?
 {¶ 38} "A Yes.
 {¶ 39} "Q Mr. Moore waived that right, correct?
 {¶ 40} "A Yes, he did.
 {¶ 41} "Q In exchange there were certain promises that were made by the State of Ohio?
 {¶ 42} "A Yes, there were.
 {¶ 43} "* * *
 {¶ 44} "* * * Do you believe that you, in your agreement, you bind Mr. Gains [the Prosecutor] and his office by your promises?
 {¶ 45} "A Yes." (Tr. 32-33.)
 {¶ 46} Moore's trial counsel then went through the March 31, 2004 agreement with the assistant prosecutor detailing which charges would be dismissed and which would be bound over. Concerning the effect of that agreement, the assistant prosecutor then testified as follows:
 {¶ 47} "Q Okay. And in that agreed judgment entry, is there an indication as to counts that would be dismissed in exchange for waiving of the mandatory bindover hearing?
 {¶ 48} "A Yes, there is.
 {¶ 49} "* * * *Page 12 
 {¶ 50} "* * * Is it your understanding that the agreement was that no evidence would be presented to the grand jury pertaining to all counts that were dismissed?
 {¶ 51} "A Yes.
 {¶ 52} "Q In other words, there would be no mention of any evidence or any facts stemming from that conduct that would be presented to the grand jury for the counts that were dismissed?
 {¶ 53} "A Those were my intentions." (Tr. 34-37.)
 {¶ 54} The trial court overruled Moore's motion finding that the grand jury "acted properly" in indicting Moore on the charges.
 {¶ 55} In State v. Adams (1982), 69 Ohio St.2d 120, 431 N.E.2d 326, at paragraph two of the syllabus, the Ohio Supreme Court held:
 {¶ 56} "When a minor is transferred from the Juvenile Court to the Court of Common Pleas on a charge which would constitute a felony if committed by an adult, the grand jury is empowered to return any indictment under the facts submitted to it and is not confined to returning indictments only on charges originally filed in the Juvenile Court."
 {¶ 57} The State cites to various cases which reiterate the Court's holding in Adams. State v. Duncan (Sept. 12, 2001), 9th Dist. No. 3117-M; State v. Walker (Sept. 28, 1999), 5th Dist. No. 99 CA 2;State v. Whisenant (1998), 127 Ohio App.3d 75, 711 N.E.2d 1016. The State maintains that it did not breach its agreement with Moore. The State argues that the agreement makes no mention of what facts would or would not come out at grand jury once Moore's case was bound over. The State posits that the grand jury is an "autonomous body" which can indict or not indict at its own will.
 {¶ 58} None of the cases cited by the State are relevant to this case because none of those cases involved pre-indictment, non-prosecution agreements. This Court has recognized the validity of such agreements.State v. Stanley, 7th Dist. No. 99-C.A.-55, 2002-Ohio-3007, reconsideration denied by 2002-Ohio-4372, appeal not allowed by96 Ohio St.3d 1513, 2002-Ohio-4950, 775 N.E.2d 856. In Stanley, *Page 13 
defendant-appellant, Warren M. Stanley, entered into a pre-indictment, non-prosecution agreement with a juvenile prosecutor for the Mahoning County Prosecutor's Office. The prosecutor testified at a hearing on Stanley's motion to dismiss that it was agreed that Stanley would not be prosecuted for "any other charges" in connection with a December 6, 1996 shooting that left one dead in exchange for his testimony against other persons involved in the shooting. Nevertheless, a juvenile complaint charging him with aggravated murder was filed and the case was transferred to the General Division.
 {¶ 59} Based on that agreement, Stanley filed a motion to dismiss. The trial court overruled the motion for three reasons: 1) no court approved the non-prosecution agreement; 2) the agreement was not memorialized in the record; and 3) Stanley was less than truthful in his testimony, which was a breach of the agreement and which rendered the agreement unenforceable. Stanley was tried before a jury and convicted. Stanley appealed to this Court assigning as error the trial court's refusal to enforce the agreement.
 {¶ 60} This Court recognized that a pre-indictment agreement is one of three basic, legitimate types of non-prosecution agreements. Specifically concerning pre-indictment, non-prosecution agreements like Stanley's, this Court observed, in relevant part:
 {¶ 61} "A third type of prosecutorial agreement exists when a suspect agrees to provide truthful information about a crime on the condition that he or she will not be prosecuted at all. State v. Small (1987),41 Ohio App.3d 252, 255, 535 N.E.2d 352 (for a full discussion of miscellaneous non-prosecution agreements, see Butler v. State (1983),55 Md.App. 409, 462 A.2d 1230). The prosecutor's power to enter into non-prosecution agreements arises, in part, from the discretion a prosecutor has in initiating a criminal prosecution. Mootispaw v.Eckstein (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197. Non-prosecution agreements made before criminal proceedings are initiated are not subject to court approval because, `the decision whether to prosecute is discretionary and not normally subject to judicial review.' Id. *Page 14 
Pre-indictment agreements do not arise out of the Ohio Rules of Criminal Procedure or out of the immunity statute, and they are not subject to requirements of Crim.R. 11 or R.C. § 2945.44. In contrast, non-prosecution agreements which arise after there has been an indictment are subject to court approval. Crim.R. 48(A); R.C. § 2941.33.
 {¶ 62} "We must also acknowledge in this discussion that, `the promise of a state official in his public capacity is a pledge of the public faith and is not to be lightly disregarded. The public justifiably expects the State, above all others, to keep its bond.' Bowers v.State (Ind. 1986), 500 N.E.2d 203, 204; cf. Santobello, supra,404 U.S. at 262, 92 S.Ct. 495, 30 L.Ed.2d 427.
 {¶ 63} "Pre-indictment agreements not to prosecute are bargained-for in the same way as Crim.R. 11 plea bargains, and are subject to review under the same contract law principles. United States v. Wood (C.A.11, 1986), 780 F.2d 929. If the agreement is conditioned upon a defendant's testimony, the defendant's failure to testify nullifies the government's promise not to prosecute. Id.; Small, supra, 41 Ohio App.3d at 255,535 N.E.2d 352. The question of the defendant's breach of the agreement, and by implication, the question of the very existence of the agreement, is subject to judicial review by way of an evidentiary hearing. Id.;Butler, supra, 55 Md.App. at 433-439, 462 A.2d 1230.
 {¶ 64} "It is clear that Appellant is alleging that he entered into a pre-indictment prosecutorial bargain, rather than a Crim.R. 11 plea bargain or statutory immunity order. Appellant argues that the agreement was entered into before he was ever suspected of committing the crime in question. Appellant raised the issue of the pre-indictment agreement as an affirmative defense in his criminal case. The burden of going forward with an affirmative defense, and the ultimate burden of proof by a preponderance of the evidence, are on the accused. R.C. § 2502.05(B).
 {¶ 65} "Appellant's motion to dismiss was, in effect, a request for specific performance of the agreement not to prosecute. An action in specific performance requires a contract which is valid and mutually binding upon the parties to the contract. Bretz v. The Union CentralLife Ins. Co. (1938), 134 Ohio St. 171, 177, *Page 15 16 N.E.2d 272. Specific performance will not be decreed absent such a contract. Id. The contract must be complete and definite in its material terms and certain enough that, `no reasonable doubt as to what the parties intended,' lingers in the mind of the court. The Lindner Co. v.The Myrod Shoe Co. (1930), 38 Ohio App. 183, 200-201, 175 N.E. 879."Stanley, 2002-Ohio-3007, at ¶ 48-52.
 {¶ 66} This Court rejected each of the three stated reasons for denial of Stanley's motion to dismiss. First, the Court found that a pre-indictment, non-prosecution agreement did not require court approval. Id. at ¶ 53. Second, the Court found that a pre-indictment, non-prosecution agreement did not need to be memorialized in the record. The Court reiterated that such agreements were governed by the law of contracts, including the law of oral contracts. Id. at ¶ 54. In Stanley's case, there was enough testimonial evidence to establish the existence of the agreement. Third, the Court determined that there was insufficient evidence to establish that Stanley had lied, breaching the agreement. Id. at ¶ 55. The Court reversed Stanley's conviction, dismissed the charges contained in the indictment, and discharged him.
 {¶ 67} Moore's case here is even a stronger one for reversal than that presented by Stanley. Moore's pre-indictment, non-prosecution agreement with the State was memorialized in the March 31, 2004 agreed judgment entry. The agreement was read into the record at a hearing held that same day. The agreement was signed by all parties, including Moore, Moore's counsel, Moore's guardian ad litem, Moore's mother, the assistant prosecuting attorney handling the case, and the Juvenile Court Judge. At the hearing on Moore's motion to dismiss based on the agreement, the assistant prosecuting attorney handling Moore's case testified about the agreement, leaving no doubt that the charges that were dismissed pursuant to the agreement were not to be pursued against Moore in the General Division.
 {¶ 68} As indicated earlier, the State maintains that the grand jury is an "autonomous" body, impliedly suggesting that the State has no control over the outcome of grand jury proceedings. Even accepting that as true, the prosecutor *Page 16 
should have tailored the submission of evidence to the grand jury in a manner that would comport with the agreement. If that was not feasible, then the prosecutor should have moved to dismiss the charges in accordance with the agreement.
 {¶ 69} The State's argument that the agreement was meant only to apply to the proceedings in juvenile court is rather disingenuous. The assistant juvenile prosecutor agreed to dismiss certain charges. "The staff of the prosecution is a unit and each member must be presumed to know the commitments made by any other member. If responsibility could be evaded that way, the prosecution would have designed another deceptive `contrivance,' akin to those * * * condemned in Mooney v.Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. 791, and Napue v.Illinoiis, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217." Santobello v.New York (1971), 404 U.S. 257, 263, 92 S.Ct. 495, 30 L.E.2d 427
(Douglas, J., concurring). The State, through the prosecutor's office agreed to dismiss certain charges, but pursued them anyway, and denied Moore the benefit of his bargain.
 {¶ 70} Therefore, Count eight (felonious assault), which has yet to be tried, is hereby dismissed. Moore's convictions on Count ten (failure to comply with an order or signal of a police officer) and Count three (receiving stolen property) are hereby reversed and vacated.
 {¶ 71} Accordingly, Moore's first assignment of error has merit.
 JOINDER {¶ 72} Moore's second assignment of error states:
 {¶ 73} "The Trial Court Erred by Granting Improper Joinder of Counts 9 10 of the Indictment on the Morning of Trial Thereby Depriving Appellant a Fair Trial in Violation of U.S. CONST. Amend. VI, and XIV; and OHIO CONST. Art. I §§ 1, 9, 10, and 16."
 {¶ 74} Moore maintains that the indictment contained charges for four separate and distinct events involving different alleged victims, witnesses, and evidence — Counts four, five, six, and eight involving the September 9, 2003 Boardman incident; Count seven involving his escape from the custody of JJC; *Page 17 
Counts one, two, and three involving the December 11, 2003 robbery and murder of Robert Smith; and Counts nine and ten involving his recapture on January 8, 2004.
 {¶ 75} Whether a defendant shall be tried separately on different counts of an indictment is a matter within the trial court's discretion.State v. Strobel (1988), 51 Ohio App.3d 31, 32, 554 N.E.2d 916;Braxton v. Maxwell (1965), 1 Ohio St.2d 134, 135, 205 N.E.2d 397. Thus, a reviewing court will not reverse the trial court's judgment absent an abuse of discretion. An abuse of discretion connotes more than an error of law or of judgment; it implies the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151,157, 404 N.E.2d 144.
 {¶ 76} Crim.R. 8(A) provides that two or more offenses may be charged in the same indictment if the offenses are (1) of the same or similar character, or (2) are based on the same act or transaction, or (3) are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or (4) are part of a course of criminal conduct.
 {¶ 77} Crim.R. 14 provides that if it appears that a defendant is prejudiced by a joinder of offenses in an indictment for trial, the court shall order an election or separate trial of counts or provide such other relief as justice requires.
 {¶ 78} If a defendant claims the court erred in refusing to allow separate trials of multiple charges, he has the burden of affirmatively showing that his rights were prejudiced. State v. Torres (1981),66 Ohio St.2d 340, 343, 421 N.E.2d 1288. "When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." State v. Schaim (1992), 65 Ohio St.3d 51, 59,600 N.E.2d 661.
 {¶ 79} As indicated earlier, initially, the trial court granted Moore's motion for severance in part on February 24, 2005. The court ordered that the following counts be tried first: Count one (aggravated murder), Count two (aggravated robbery), Count three (receiving stolen property), and Count seven (escape). The court held that the *Page 18 
remaining counts be tried second: Count four (aggravated robbery), Count five (gross sexual imposition), Count six (kidnapping), Count eight (felonious assault), Count nine (receiving stolen property), and Count ten (failure to comply with an order or signal of a police officer). However, on the day before trial, contrary to its February 24, 2005 judgment entry ordering severance, and over the objection of Moore's trial counsel, the trial court sustained the State's motion to join to Counts nine (receiving stolen property) and ten (failure to comply with an order or signal of a police officer) to be tried in the first trial along with Counts one (aggravated murder), two (aggravated robbery), three (receiving stolen property), and seven (escape).
 {¶ 80} In this case, Moore was prejudiced by the joinder of Count nine (receiving stolen property) and Count ten (failure to comply with an order or signal of a police officer) for two reasons. First, although there was a pending motion from the State to join Counts nine and ten, the trial court had already set in place which counts were gong to be tried together and separately on February 25, 2005. Contrary to the State's assertion, it would seem rather presumptuous to assume that Moore's second, appointed trial counsel prepared to try Counts nine and ten in anticipation that they might be joined with the other counts. To alter that framework the day before trial seems inherently prejudicial given the number of charges and complexity of the case.
 {¶ 81} Second, the evidence used to establish Counts nine and ten would not have been admissible in the trial of the other counts under Evid.R. 404(B), governing the admissibility of other crimes, wrongs, or acts. Also, the evidence used to establish Counts nine and ten was sufficiently separate and distinct. No physical evidence connects the December 11, 2003 Smith murder with Moore's January 8, 2004 recapture by the Youngstown Police Department's Street Crime Unit. The eyewitness testimony of Damon Clark and Moore's tacit admission to Shalonda Bohazi-Hammond proved that Moore shot and killed Smith. None of them testified to having been with Moore when he was recaptured or to any of the events surrounding his recapture. Detective/Sergeant Pat Kelly testified only to the fact that he and his *Page 19 
colleagues apprehended Moore after Moore fled in a stolen vehicle. He did not testify about Moore's involvement in the Smith murder and no testimony was presented that the stolen vehicle was in any way associated with those vehicles that Moore and Clark stole around the time of Smith's murder. In sum, no person's testimony overlapped with another concerning these two separate and distinct events.
 {¶ 82} The next question is whether the trial court erred in allowing the joinder of Count seven (escape) to remain. The Ohio Supreme Court has noted, "`[i]t is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.'" (Emphasis added.) State v. Eaton (1969), 19 Ohio St.2d 145,160, 196, 249 N.E.2d 897, vacated on other grounds (1972), 408 U.S. 935,92 S.Ct. 2857, 33 L.Ed.2d 750, quoting 2 Wigmore, Evidence (3 Ed.) 111, Section 276. See, also, State v. Palmer, 7th Dist. No. 04-JE-41,2006-Ohio-749, at ¶ 18. However, here, Moore's escape followed the September 9, 2003 Boardman incident and occurred almost two monthsbefore Smith's murder. Therefore, Moore's escape from JJC could not have been admissible as evidence of consciousness of guilt of a crime that had yet to occur.
 {¶ 83} Based on the foregoing reasons, Moore's convictions on Count one (aggravated murder), Count two (aggravated robbery), Count seven (escape), and Count nine (receiving stolen property) are hereby reversed. Moore's conviction on Count three (receiving stolen property) and Count ten (failure to comply with an order or signal of a police officer) have already been reversed and vacated pursuant to our resolution of his first assignment of error concerning the pre-indictment, non-prosecution agreement. On remand, there shall be three separate retrials: one for Count one (aggravated murder) and Count two (aggravated robbery); a second for Count seven (escape); and a third for Count nine (receiving stolen property).
 {¶ 84} Accordingly, Moore's second assignment of error has merit.
 "OTHER ACTS" EVIDENCE {¶ 85} Moore's third assignment of error states: *Page 20 
 {¶ 86} "The Trial Court Erred in Permitting `Other Acts' Evidence to Be Placed Before the Jury, Thereby Depriving Appellant a Fair Trial in Violation of U.S. CONST. Amend. VI, VIII, and XIV; and OHIO CONST. Art.I §§ 1, 2, 9, 10, and 16, and OHIO REV. CODE ANN. § 2945.59 and OHIO EVID.R. 404(b)."
 {¶ 87} At trial, the State called Brian Ellis (Ellis) to testify. Ellis worked as a security guard at a federal building in Canton, Ohio. There, he wore a duty belt upon which he attached a holstered .357 Magnum revolver with a chrome finish and black handle, speed loaders which contained additional .38 rounds, and a flashlight. On his way to and from work, Ellis stored that equipment in the trunk of a blue, 1993 Buick. Ellis, who lived in the area, was at the 541 Club on December 10, 2003 (the day prior to Robert Smith's murder in the parking lot of the club), when the car was stolen.
 {¶ 88} Moore was never charged with stealing Ellis' vehicle. Apparently, however, the State tried to infer that the gun used to shoot and murder Robert Smith was the same one that was in the trunk of Ellis' stolen vehicle. After Robert Smith's murder, Moore and Damon Clark (Clark) each arrived at the home of Shalonda Bohazi-Hammond (Bohazi-Hammond) later that night. Bohazi-Hammond testified that Moore told her that "they had shot somebody." (Tr. 475.) She also testified that Moore was wearing a belt with a gun holster. (Tr. 476.) She described the gun as having a silver or chrome finish. (Tr. 475.) She also stated that Moore unloaded empty shells from the gun into an ashtray. (Tr. 476.) She also noticed what she thought was a blue Buick LeSabre parked out front, along with a white van. (Tr. 477, 479.)
 {¶ 89} When asked about the gun, Clark testified as follows:
 {¶ 90} "Q Now, when you were at Shalonda's house, did you see any type of weapon on him?
 {¶ 91} "A Yes, sir.
 {¶ 92} "Q What did you see?
 {¶ 93} "A He had a security guard type — police type like belt with speed loaders with a .357. *Page 21 
 {¶ 94} "Q Do you mean a belt something like this deputy has on?
 {¶ 95} "A Yes, sir.
 {¶ 96} "Q Okay. Thank you, Deputy. You say it has a speed loader?
 {¶ 97} "A Yes, sir.
 {¶ 98} "Q Did you watch him use the speed loader?
 {¶ 99} "A He took the bullets out the — the empty ones out the gun and dumped it in the ashtray, took the speed loader and pushed it up and then put the bullets in there real quick.
 {¶ 100} "Q And reloaded?
 {¶ 101} "A Yes, sir." (Tr. 526-527.)
 {¶ 102} Moore argues that the introduction of this "other acts" evidence was so weak that it could not have even supported a conviction in a separately indicted case and so prejudicial as to undermine confidence in the outcome of this case. Moore maintains that the origin of the murder weapon was never an issue in this case and that any evidence in connection with that was irrelevant and immaterial. Moore points out that there was other sufficient evidence to establish that Smith died from gunshot wounds and that he had a gun the night of the shootings. Moreover, Moore contends, there was no evidence to establish that slugs taken from Smith and the crime scene came from the gun that was stored in Ellis' stolen vehicle.
 {¶ 103} The State maintains that evidence relating to the gun "simply showed plan and preparation relative to an ongoing criminal adventure." (State's Brief, p. 12.)
 {¶ 104} R.C. 2945.59 and Evid.R. 404(B) provide the rules for the admission or exclusion of other crimes, wrongs, or acts. R.C. 2945.59
states:
 {¶ 105} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they *Page 22 
are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 106} Evid.R. 404(B) provides:
 {¶ 107} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 108} Generally, these rules are to be construed against admissibility of the "other acts" evidence. State v. Burson (1974),38 Ohio St.2d 157, 158, 67 O.O.2d 174, 311 N.E.2d 526.
 {¶ 109} The admission and exclusion of evidence are within the broad discretion of the trial court. State v. Mays (1996),108 Ohio App.3d 598, 617, 671 N.E.2d 553. "A reviewing court should be slow to interfere unless the court has clearly abused its discretion and a party has been materially prejudiced thereby." Id. An abuse of discretion is more than a mere error of law or of judgment; it implies an attitude that is unreasonable, unconscionable, or arbitrary. State v. Adams (1980),62 Ohio St.2d 151, 156, 16 O.O.3d 169, 404 N.E.2d 144.
 {¶ 110} Here, the theft of the gun from Ellis' vehicle tended to establish Moore's "system in doing the act in question may be proved" and opportunity. Damon Clark's testimony revealed that he and Moore stole vehicles on a routine basis. Ellis' vehicle was stolen from the same parking lot the day before where Robert Smith was shot and murdered. Moore's description of the murder weapon was remarkably similar to the gun described by Ellis. Therefore, the trial court did not abuse its discretion in allowing testimony concerning Ellis' stolen vehicle.
 {¶ 111} Accordingly, Moore's third assignment of error is without merit.
 SUFFICIENCY OF THE EVIDENCE — RECEIVING STOLEN PROPERTY {¶ 112} Moore's fourth assignment of error states: *Page 23 
 {¶ 113} "Appellant Was Denied Due Process and the Liberties Secured by the U.S. CONST. Amend. VI, VIII, and XIV; and OHIO CONST. Art. §§ 1, 2, 9, 10, and 16 When He Was Convicted of the Offenses of Receiving Stolen Property upon Insufficient Evidence."
 {¶ 114} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict.State v. Smith (1997), 80 Ohio St.3d 89, 113, 684 N.E.2d 668. In essence, sufficiency is a test of adequacy. State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith, 80 Ohio St.3d at 113,684 N.E.2d 668.
 {¶ 115} Moore was indicted and tried on two counts of receiving stolen property. Count three was for a 1995 Pontiac Transport van owned by Evelyn Hammond (Hammond). The indictment stated that Count three occurred on or about December 11, 2003. Count nine was for a 1998 Oldsmobile 98 owned by Michael Ascione (Ascione). This was the vehicle that Moore fled in on January 8, 2004, when the Youngstown Police Department's Street Crime Unit ultimately apprehended Moore.
 {¶ 116} R.C. 2913.51, which defines the offense of receiving stolen property, states:
 {¶ 117} "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." R.C.2913.51(A).
 {¶ 118} Moore argues that the jury could not have found the essential elements to convict him of receiving stolen property beyond a reasonable doubt, based on the evidence presented; specifically, regarding Hammond's van. Moore *Page 24 
points out Hammond's uncertainty as to when the van was stolen and the absence of any evidence that he was seen driving the van.
 {¶ 119} The State argues that there was sufficient evidence presented at trial that, if believed, satisfied the elements of receiving stolen property. The State offers little explanation other than to say that the owners of both vehicles testified that the vehicles were not Moore's property.
 {¶ 120} Regarding Count nine of the indictment, Michael Ascione (Ascione) testified that he reported his silver and gray 1988 Oldsmobile 98 was stolen on January 6, 2004. (Tr. 553-555.) Detective/Sergeant Pat Kelly (Det./Sgt. Kelly), commander of the Youngstown Police Department's Street Crimes Unit, testified about apprehending Moore on January 8, 2004, after a vehicle pursuit. (Tr. 556-560.) Det./Sgt. Kelly testified that Moore fled in a 1988 Oldsmobile 98 which had been stolen. (Tr. 562.) After viewing this evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of Count nine proven beyond a reasonable doubt.
 {¶ 121} Moore's conviction on Count three is reversed and vacated based on our resolution of Moore's first assignment of error. His argument that the conviction was not support by sufficient evidence is rendered moot.
 {¶ 122} Accordingly, Moore's fourth assignment of error is without merit.
 SPEEDY TRIAL {¶ 123} Moore's fifth assignment of error states:
 {¶ 124} "The Trial Court Erred in Denying Appellant's Motion for Discharge for Violations of Speedy Trial in violation of the U.S. CONST. Amend. VI and XIV; and OHIO CONST. Art. §§ 9, 10, and 16."
 {¶ 125} Moore was arrested on January 8, 2004, and brought to trial on January 1, 2006. Moore states that he never signed a waiver of his right to a speedy trial and that his trial nineteen months after bindover was violative of that right.
 {¶ 126} The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and *Page 25 
public trial." This right was made applicable to the States by theFourteenth Amendment. Article I, Section 10 of the Ohio Constitution also guarantees an accused the right to a speedy trial.
 {¶ 127} Every person who is charged with an offense for which he may be deprived of his liberty or property is entitled to this fundamental right of a speedy trial. State v. Dunlap, 7th Dist. No. 01-CA-124, 2002-Ohio-3178, at ¶ 10. This is so because the right to a speedy trial "`is premised upon the reality that fundamental unfairness is likely in overlong prosecutions.'" State v. Anderson, 7th Dist. No. 02-CO-30, 2003-Ohio-2557, at ¶ 13, quoting Dickey v. Florida (1970), 398 U.S. 30,54, 90 S.Ct. 1564, 26 L.Ed.2d 26.
 {¶ 128} Pursuant to R.C. 2945.71(C)(2), the State must bring a person charged with a felony to trial within two hundred seventy days after their arrest. If the accused is held in jail in lieu of bail on the pending charge, then each day they are held in jail counts as three days. R.C. 2945.71(E). This is known as the "triple-count" provision. It requires the State to bring the accused to trial within ninety days after their arrest.
 {¶ 129} The speedy trial time periods found in R.C. 2945.71 do not apply to a case initiated in juvenile court until the day after that court relinquishes jurisdiction and properly binds the case over to the adult division of the court. State v. Bickerstaff (1984),10 Ohio St.3d 62, 67, 10 OBR 352, 461 N.E.2d 892. See, also, State v. Moore, 7th Dist. No. 02 CA 216, 2005-Ohio-5630, at ¶ 6.
 {¶ 130} This Court previously set out the standard of review for speedy trial issues in State v. High (2001), 143 Ohio App.3d 232,241-242, 757 N.E.2d 1176, as follows:
 {¶ 131} "Our standard of review of a speedy trial issue is to count the days of delay chargeable to either side and determine whether the case was tried within the time limits set by R.C. 2945.71. Oregon v.Kohne (1997), 117 Ohio App.3d 179, 180, 690 N.E.2d 66, 67; State v.DePue (1994), 96 Ohio App.3d 513, 516, 645 N.E.2d 745, 746-747. Our review of the trial court's decision regarding a motion to dismiss *Page 26 
based upon a violation of the speedy trial provisions involves a mixed question of law and fact. State v. McDonald (June 30, 1999), Mahoning App. Nos. 97 C.A. 146 and 97 C.A. 148. Due deference must be given to the trial court's findings of fact if supported by competent, credible evidence. Id. However, we must independently review whether the trial court properly applied the law to the facts of the case. Id. Furthermore, when reviewing the legal issues presented in a speedy trial claim, an appellate court must strictly construe the relevant statutes against the state. Id., citing Brecksville v. Cook (1996),75 Ohio St.3d 53, 57, 661 N.E.2d 706, 708-709." See, also, State v. Sanchez,110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, at ¶ 8.
 {¶ 132} Although Moore argues that his speedy trial right was violated, he offers no timeline explaining tolling dates and starting dates for speedy trial purposes.
 {¶ 133} The juvenile court relinquished jurisdiction over Moore and transferred him to the general division of the common pleas court by judgment entry of April 8, 2004. Therefore, the speedy trial clock began to run the day after, April 9, 2004. Bickerstaff, supra. The State argues that the clock remained tolled until the trial court appointed counsel on May 18, 2004, citing State v. Hiatt (1997),120 Ohio App.3d 247. While Hiatt may be interpreted as supporting such a proposition, it would have no application here since it was everyone's intention that the counsel who represented Moore in the juvenile proceedings would continue to represent him as his case was moved to the General Division. The trial court entry appointing Moore's counsel was a mere formality and does not constitute a tolling event under the circumstances of this case.
 {¶ 134} On May 21, 2004, Moore requested discovery and a bill of particulars. (Docket at 6). A discovery request or motion tolls the running of the speedy trial clock. State v. Brown, 98 Ohio St.3d 121,2002-Ohio-7040, 781 N.E.2d 159, at ¶ 23 (interpreting R.C. 2945.72[E]). However, the delay chargeable to the defendant is only that which is necessitated by the State's response to the discovery request. Id. *Page 27 
at ¶ 4; R.C. 2945.72(E). Here, the record reflects that the State responded to the discovery request 20 days later, a reasonable time period within which to respond. (Docket 12). Therefore, this event stopped the running of the speedy trial clock and left it tolled at 42 days (April 9, 2004 through May 21, 2004).
 {¶ 135} On June 9, 2004, just one day prior to the State responding to Moore's aforementioned discovery request, Moore filed a motion for disclosure of exculpatory evidence. (Docket at 11). This event too continued to toll Moore's speedy trial clock at 42 days.
 {¶ 136} On June 16, 2004, the case was called to trial and Moore's counsel moved for a continuance because he had "just" received discovery and desired to file additional motions prior to trial. (Docket 13). The trial court reset the matter for jury trial on July 14, 2004. As indicated earlier, the State had responded to the discovery request six days earlier. (Docket 12). Therefore, since discovery had been provided and Moore's counsel was the one who moved for a continuance, the resulting delay is properly chargeable to Moore and his clocked remained tolled at 42 days.
 {¶ 137} On July 12, 2004, Moore's counsel filed two motions which continued tolling the speedy trial clock. The first was for a continuance because Moore's counsel was scheduled for a jury trial in another criminal case. (Docket 15). The second was for an order to hire a private investigator. (Docket 16); State v. Bevins, 1st Dist. No. C-050754, 2006-Ohio-6974, at ¶ 63; State v. Griffin, 8th Dist. No. 83724, 2004-Ohio-4344, at ¶ 21, fn. 3.
 {¶ 138} On July 14, 2004, on the date set for trial, Moore's counsel filed a motion for severance, further tolling the speedy trial clock at 42 days days. (Docket 17). The following day, the trial court granted Moore's request for an investigator and took the motion for severance under advisement pending a response from the State. (Docket 18, 19).
 {¶ 139} At a pretrial held on August 27, 2004, the speedy trial clock continued tolling as Moore's counsel requested a continuance to file a motion to dismiss and a *Page 28 
motion for supplemental discovery. (Docket 21). The trial court reset the trial for October 4, 2004, accordingly.
 {¶ 140} On October 1, 2004, the State filed a response to Moore's discovery request (Docket 22), notice of its intention to use evidence (Docket 22), a supplemental discovery disclosure (Docket 25), and its own motion for discovery (Docket 24, 29). The State also filed a bill of particulars. (Docket 23). That same day, Moore's counsel filed a motion for a continuance. (Docket 26, 31). Moore's counsel explained that he was scheduled for another civil trial. He also explained that he was filing a contemporaneous motion for supplemental discovery (Docket 27, 30) and had yet to receive the bill of particulars and necessary discovery. The trial court granted his motion and reset the matter for pretrial on October 27, 2004. (Docket 28). The clock remained tolled at 42 days.
 {¶ 141} On October 25, 2004, the State filed an additional supplemental discovery disclosure. (Docket 32). At pretrial on October 27, 2004, the trial court continued the case until November 12, 2004. (Docket 33). The court cited discovery just being completed and Moore's pending motion for severance. Because the court was conducting a trial in another, civil case, the court continued Moore's case again and reset it for November 29, 2004. (Docket 34).
 {¶ 142} On November 29, 2004, Moore's counsel filed a motion to transcribe various audio and videotaped statements of witnesses. (Docket 37). That same day, the trial court granted Moore's motion and continued the case until December 13, 2004, because it was involved in another trial. (Docket 35). On December 13, 2004, the trial court continued Moore's case because the statements had yet to be transcribed by the court reporter. (Docket 38).
 {¶ 143} On February 8, 2005, Moore's counsel requested a continuance because his pregnant wife was scheduled for a C-section delivery on February 14. 2005, the same date that had since been set for trial. (Docket 39). The trial court granted the motion that same day. (Docket 42). Two days later, Moore's counsel also filed a supplemental motion to sever (Docket 43) and a motion to dismiss/enforce *Page 29 
plea agreement (Docket 44). These events continued to toll Moore's speedy trial clock at 42 days.
 {¶ 144} Meanwhile, the State responded to Moore's motion for severance on February 11, 2005 (Docket 45) and the trial court granted it in part on February 24, 2005 (Docket 46). Also, on March 4, 2005, the court reporter filed the transcripts that Moore had requested. (Docket 47).
 {¶ 145} Moore's case came on for trial on March 16, 2005, and Moore's counsel filed a motion for a continuance due to a death in the family. (Docket 48). He also filed a motion to reconsider the trial court's decision concerning severance. (Docket 49). The trial court granted the motion to continue and reset the matter for April 6, 2005. (Docket 50). On April 6, 2005, the trial court granted another motion to continue requested by Moore's counsel and reset the case for trial on June 13, 2005. (Docket 52). The trial court explained that the motion was sustained due to Moore's pending motions set to be heard on May 24, 2005.
 {¶ 146} In the interim, Moore's counsel filed a motion to suppress any statements Moore made to police when he was apprehended by the Youngstown Police Department's Street Crimes Unit. (Docket 57). On May 24, 2005, the trial court continued the motions hearing set for that day and reset it for June 6, 2005, because it was involved in another trial. (Docket 60). On June 6, 2005, Moore's counsel filed a motion for a continuance because he was already scheduled for five sentencing hearings that day in Portage County, Ohio. (Docket 61). The trial court granted the motion and reset it for June 13, 2005. (Docket 62).
 {¶ 147} On June 13, 2005, Moore's counsel filed a motion to dismiss on speedy trial grounds. (Docket 64). However, the speedy trial clock was still at 42 days and Moore's counsel, as here, offered no timeline or arguments as to why certain time periods should be chargeable against the State and not Moore. Moore's counsel also filed a motion in limine (Docket 65) and a motion to exclude testimony (Docket 66). That same day, the trial court attempted to hold a hearing on pending matters. However, due to certain issues raised by Moore himself concerning his *Page 30 
counsel, the trial court allowed his counsel to withdraw and appointed new counsel. (Docket 87).
 {¶ 148} Due to conflicting trials, the trial court continued Moore's case until August 19, 2005. (Docket 90, 93). A pretrial was held on August 19, 2005. (Docket 95). Another pretrial was set for September 29, 2005, and a jury trial for October 3, 2005. On September 20, 2005, Moore's counsel filed a motion for a continuance of the October 3, 2005 trial date, presumably to get himself familiar with Moore's case since he was newly appointed. (Docket 96). The trial court granted the motion and reset the case for trial on January 3, 2006. The court heard the remaining, pending motions on January 3, 2006, and seated a jury the following day. Moore's speedy trial clock remained tolled until that day at 42 days.
 {¶ 149} In sum, it is obvious that more than 90 calendar days elapsed between the day after Moore was indicted and the day of his trial. However, all but 42 of those days were delays occasioned by Moore's filing various pretrial motions and continuances, and continuances caused by conflicting trials. Therefore, the trial court did not violate Moore's speedy trial rights.
 {¶ 150} Accordingly, Moore's fifth assignment of error is without merit.
 EFFECTIVE ASSISTANCE OF COUNSEL {¶ 151} Moore's sixth assignment of error states:
 {¶ 152} "Appellant's Convictions and Sentences Are in Violation of the State and Federal Constitutions Because Appellant Was Denied the Effective Assistance of Counsel When Counsel Failed to File a Motion to Suppress Evidence. U.S. CONST., amend. VI and XIV; OHIO CONST., art. I, §§ 1, 10 and 16."
 {¶ 153} As explained under Moore's third assignment of error, the State presented the testimony of Brian Ellis (Ellis). He testified that the vehicle he was driving was stolen from the parking lot of the 541 Club on December 10, 2003 (the day before Robert Smith's murder). Ellis was a security guard and had stored his service revolver in the trunk at the time. Moore was never charged with stealing Ellis' vehicle. Apparently, however, the State tried to infer that the gun used to shoot and *Page 31 
murder Robert Smith was the same one that was in the trunk of Ellis' stolen vehicle. Moore argues that his trial counsel was ineffective because he did not file a motion to suppress evidence concerning the theft of Ellis' vehicle.
 {¶ 154} The State maintains that Moore's trial counsel objected to this evidence on an "other acts" basis. The State also argues that there was no constitutional basis for suppression of that evidence and questions whether suppression of it would have benefited or favored Moore's case.
 {¶ 155} To prove an allegation of ineffective assistance of counsel, appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. Id. To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different.Bradley, 42 Ohio St.3d at paragraph three of the syllabus.
 {¶ 156} Appellant bears the burden of proof on the issue of counsel's alleged ineffectiveness. State v. Calhoun (1999), 86 Ohio St.3d 279,289, 714 N.E.2d 905. In Ohio, a licensed attorney is presumed competent. Id.
 {¶ 157} In this case, Moore has failed to establish the deficient performance component of his ineffective-assistance-claim. "[G]enerally, trial counsel's failure to file a motion to suppress does not per se constitute ineffective assistance of counsel." State v. Pimental, 8th Dist. No. 84034, 2005-Ohio-384, at ¶ 15, citing Kimmelman v.Morrison (1986), 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305;State v. Nields, 93 Ohio St.3d 6, 34, 752 N.E.2d 859, 2001-Ohio-1291. Additionally, there was some attempt by Moore's trial counsel to limit the admission of "other acts" evidence. On June 13, 2005, Moore's first appointed counsel filed a motion in limine seeking an order from the trial court to prohibit the State from mentioning or *Page 32 
presenting evidence of the charges Moore was incarcerated for while at the Mahoning County Juvenile Justice Center (JJC) at the time of his escape on October 22, 2003. (Docket 65).
 {¶ 158} While the written motion in limine itself did not specifically address the Ellis incident, Moore's new counsel seized upon an opportunity to expand the breadth of the motion when it was heard before the trial court on January 3, 2006. That colloquy went as follows:
 {¶ 159} "MR. YARWOOD [Moore's trial counsel]: We can discuss the motion in limine, if you'd like, Your Honor.
 {¶ 160} "THE COURT: The one filed June 13th of `05?
 {¶ 161} "MR. YARWOOD: Yes, Your Honor. The basis of that motion in limine is that it's a motion to limit any evidence or any discussion or any mention of any uncharged conduct or any other conduct that he's been charged of but not convicted or is not germane to this case. The cases stemming from Boardman, all counts have been severed; his juvenile record or any other uncharged conduct that may be applicable. Thank you, Your Honor.
 {¶ 162} "MR. FRANKEN [assistant prosecutor]: And we have no intention of using any of that evidence, Your Honor. Should he take the stand, of course his prior record now is pertinent, but other than that, we have no intention of using that type of evidence.
 {¶ 163} "THE COURT: Okay. So you will refrain from any comments during voir dire anything pertaining to any of that?
 {¶ 164} "MR. FRANKEN: Yes, Your Honor.
 {¶ 165} "THE COURT: Okay. That will also become an order of the court." (Tr. 86-87).
 {¶ 166} From this, it is apparent that Moore's trial counsel attempted to curtail the admission of "other acts" evidence, whatever its source. Despite the trial court granting the motion, it later allowed Ellis' testimony during the trial. However, as indicated under Moore's third assignment of error, the trial court did not err in *Page 33 
allowing Ellis' testimony and, therefore, Moore suffered no prejudice. Even assuming arguendo that the admission of Ellis's testimony was error, that error is attributable to the trial court and cannot properly be cast upon the effectiveness of Moore's counsel.
 {¶ 167} In sum, Moore cannot establish that his trial counsel's performance fell below an objective standard of reasonable representation, nor can he demonstrate prejudice.
 {¶ 168} Accordingly, Moore's sixth assignment of error is without merit.
 {¶ 169} The judgment of the trial court is hereby reversed as it pertains to Counts three (receiving stolen property), eight (felonious assault), and ten (failure to comply with an order or signal of a police officer) of the indictment. Those Counts are dismissed in accordance with the pre-indictment, non-prosecution agreement as explained in Moore's first assignment of error. Moore's convictions on Count one (aggravated murder), Count two (aggravated robbery), Count seven (escape), and Count nine (receiving stolen property) are hereby reversed in accordance with our resolution of Moore' second assignment of error. On remand, there shall be three separate retrials concerning those counts: one for Count one (aggravated murder) and Count two (aggravated robbery); a second for Count seven (escape); and a third for Count nine (receiving stolen property).
Vukovich J., concurs.
Waite, J., concurs.
[1] This opinion does not refer to the victim by name and instead will refer to the alleged crime as the September 9, 2003 Boardman incident for two reasons. First, the incident involved a sexual assault and there is an interest in protecting the victim's privacy. Second, the charges resulting from this incident were subsequently severed from the charges that are the subject of the present appeal; the victim never testified in this case.
[2] The judgment entry also references the dismissal of traffic charges stemming from case No. 04 JT 77 that was not mentioned in the March 31, 2004 agreement. That case has not been made a part of the record and appears to be inconsequential to any issues raised in this appeal.
[3] The underlying facts and procedural history of that case are not part of the record in this case. As this appeal pertains only to Moore's first trial, case No. 04 CR 987 is not relevant to the issues raised by the present appeal. *Page 1